**UNITED STATES of America**

**v.**

**Lester L. LILLEY.**

**UNITED STATES of America**

**v.**

**Malcolm G. BAKER, Jr.**

**Crim. Nos. 67–H–233, 68–H–228.**

United States District Court
S. D. Texas,
Houston Division.

Oct. 2, 1968.

U. S. Atty., Morton Susman, and Asst. U. S. Atty., Malcolm Dimmitt, for the United States.

Wayne Fisher, of Fisher, Roch, Sales & Blackstock, Houston, Tex., for Lester L. Lilley.

Walter P. Zivley of Liddell, Dawson, Sapp & Zivley, Houston, Tex., for Malcolm G. Baker, Jr.

## MEMORANDUM OPINION:

NOEL, District Judge.

These are related cases arising out of the collapse of Westec Corporation in August 1966. Both defendants are charged with violations of SEC Rule 10b–5, which provides as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of a national securities exchange,

(1) to employ any device, scheme or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading or

(3) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b–5, prescribed by the Securities and Exchange Commission pursuant to § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).

On December 9, 1967, defendant Lester L. Lilley pled guilty to a one-count indictment charging that he "directly and indirectly, wilfully and knowingly, did employ a manipulative and deceptive device and contrivance * * * in that [he] did employ a device, scheme, and artifice to defraud, did make untrue statements of material facts * * * and did engage in acts, practices and a course of business which did operate as

a fraud and deceit upon various persons, including brokers, dealers, and stockholders of Westec Corporation, all in the following manner:

"That from on or about May 1, 1966, until on or about August 25, 1966, [he] and others acting in concert with him purchased approximately 470,000 shares of the common capital stock of Westec Corporation from various brokerage companies in the State of Texas and elsewhere at prices ranging from $45.00 to $60.00 per share, while at substantially the same time, the defendant * * * and others acting in concert with him, sold and arranged for the sale of a substantial number of said shares of said Westec Corporation common capital stock."

It was further alleged in the indictment to which Lilley pled guilty, that the "series of transactions in Westec Corporation common capital stock described hereinabove would and did create a false and misleading appearance of actual and apparent active trading in such stock and did raise its price and did cause and induce other persons to purchase such stock, all of which was then and there well known to the defendant, Lester L. Lilley, and such acts were committed and caused to be committed by him for such purposes."

On August 27, 1968, defendant Malcolm G. Baker, Jr., pled guilty to a one-count criminal information likewise charging violation of SEC Rule 10b–5 in that "on or about May 11, 1966 [Baker] and others acting in concert with him purchased approximately 13,000 shares of the common capital stock of Westec Corporation * * * which said purchases were intended to, and did, artificially maintain the price of Westec stock and did support the market price of said stock and prevent it from declining and would and did create a false and misleading appearance of actual and apparent active trading in such stock * * * and said acts were committed and caused to be committed by him for such purposes."

By pleading guilty to the indictment and information, defendants admitted each and all of the acts charged in them, respectively. Subject to their motions to which this memorandum opinion is addressed, defendants are now before the Court for sentencing.

The penalty provision of the Securities Exchange Act of 1934 is 15 U.S.C. § 78ff(a), which provides:

Any person who willfully violates any provision of this chapter, or any rule or regulation thereunder the violation of which is made unlawful or the observance of which is required under the terms of this chapter, * * shall upon conviction be fined not more than $10,000, or imprisoned not more than two years, or both, * *; *but no person shall[1] be subject to imprisonment under this section for the violation of any rule or regulation if he proves that he had no knowledge of such rule or regulation.* (Emphasis added to "no knowledge" clause.)

Pursuant to the "no knowledge" clause or exception of § 78ff(a), each defendant has moved to have imprisonment excluded from the sentence which this Court may impose. An evidentiary hearing has been held, at which each defendant took the witness stand. The only evidence of probative force consisted of the testimony of defendants. Each defendant testified that he had no knowledge of Rule 10b–5 at the time he committed the admitted acts.

In ruling on these motions the Court first must construe the penalty statute to determine the meaning and purpose of the "no knowledge" clause or exception and its applicability, if any, to the charges and facts. If the clause is found applicable, it must then be determined as to each defendant whether he has discharged his burden of proof.

The clause or exception is unusual in that it permits a defendant to rebut the presumption that he had knowledge of the rule or regulation under which he is charged. The provision has never been construed, although it has been held con-

stitutional in the face of vagueness attack.[1]

The first step, indeed the most essential step, in the construction of any statute is to ascertain the intent of the Congress in passing it. Unfortunately, in the case of this "no knowledge" clause, the evidence of such intent is somewhat obscure. The clause was added in the conference committee formed to compromise the differences in the bills passed by the Senate and the House of Representatives, which ultimately became the Securities Exchange Act of 1934. The report of the conference committee announced but did not explain the compromise[2] between the House and Senate versions of Section 32 of the Act. From the research conducted by counsel, and its own independent research, the Court is persuaded that no minutes or other records of the conference committee's deliberations exist. But earlier debates in both House and Senate cast some light on the purpose of the clause, for they reveal the fears generated by the spectre of a severe penalty ensuing from violation of a rule or regulation of the proposed new administrative body, of which the person charged had no knowledge.

The bill approved by the House had a more stringent punishment provision than the compromise contained in § 78 ff(a). It did not distinguish violations of rules from violations of the Act. For either kind of violation an offender might be fined or imprisoned or both.[3] Representative Cooper, a member of the House Committee on Interstate and Foreign Commerce which had considered the bill, offered an amendment that would have limited criminal punishment to violations of the Act itself. The amendment was defeated. The House rejected Representative Cooper's argument that an administrative board should not be granted the "unlimited power to draft rules and regulations the violation of which is a criminal offense."[4]

The Senate version, by contrast, distinguished violations of a rule from a violation of the Act. The maximum penalty for the former was to be only a $10,000 fine, while the maximum penalty for the latter was to be a $25,000 fine and/or five years imprisonment. Senator Steiwer considered even a maximum of $10,000 too severe a penalty for a rule violation, and offered an amendment that would have limited the fine to $500 unless the prosecution proved an intent to defraud. His remarks suggest a fear that the Commission might adopt or amend rules and regulations without notice, thereby subjecting innocent persons to a harsh criminal penalty.[5] The Senate rejected this amendment because violations of rules had already been sufficiently distinguished from violations of the Act.[6]

It seems clear, therefore, that the compromise was adopted to ensure that no person could be imprisoned for the violation of a standard contained in a rule of which he had no knowledge. It is equally clear, however, that Congress intended to charge every man with knowledge of the standards prescribed in the securities acts themselves. It would frustrate the intent of Congress to permit a person whose conduct is expressly prohibited by statute to attempt to prove no knowledge of a parallel rule provision. Allowing these defendants to invoke the "no knowledge" clause would have precisely this effect. The conduct here admitted by defendants is prohibited by two provisions of the securities acts. Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), prohibits securities fraud in language almost iden-

1. United States v. Guterma, 189 F.Supp. 265 (S.D.N.Y.1960).

2. Report of the Joint Conference Committee, 78 Cong.Rec. 10263 (1934).

3. Ibid.

4. 78 Cong.Rec. 8112, 8113 (1934).

5. 78 Cong.Rec. 8273–8298 (1934).

6. 78 Cong.Rec. 8281–8298 (1934).

tical with the language of Rule 10b–5.[7] Moreover, the fraudulent activity to which defendants have pled guilty, price manipulation, is expressly prohibited by § 9(a) (2) of the 1934 Act, 15 U.S.C. § 78i(a) (2).[8] It was not intended by the Congress that the "no knowledge" clause of the penalty statute (§ 78ff(a)) should be available to persons who were charged with knowing their conduct to be in violation of law, but did not happen to know that it was in violation of a particular rule or regulation of the SEC such as Rule 10b–5.

■ Alternatively, if the "no knowledge" clause is applicable under the facts of their situation, I find that defendants have failed to satisfy their burden of showing no knowledge of Rule 10b–5. Proof of no knowledge cannot mean proof that defendants did not know, for example, the precise number or common name of the rule, the book and page where it was to be found, or the date upon which it was promulgated. It does not even mean proof of a lack of knowledge that their conduct was proscribed by rule rather than by statute. Proof of "no knowledge" of the rule can only mean proof of an ignorance of the substance of the rule, proof that they did not know that their conduct was contrary to law.

Here, neither defendant has discharged his burden, whether the standard for measuring same be that of "beyond a reasonable doubt" or, "by a preponderance of the evidence." The rule does not attempt to itemize specific kinds of fraud. Therefore, proof that a defendant knew securities fraud to be prohibited by law should prevent him from discharging his burden under the "no knowledge" clause of proving ignorance of Rule 10b–5.

■ In pleading guilty to the charges heretofore quoted, each of these defendants admitted that he knew securities fraud was a violation of law. Each also testified that he did not consider his manipulative conduct as fraudulent, but Rule 10b–5 does not expressly prohibit the fraudulent manipulation of securities prices. It prohibits fraud, and leaves to the courts the task of defining the specific kinds of securities fraud. A lack of knowledge that manipulative activity is fraudulent is thus irrelevant. What is relevant is that each defendant has admitted that he knew his conduct was manipulative and that he knew securities fraud was illegal. These admissions by each defendant preclude him from discharging his burden of showing "no knowledge" of Rule 10b-5. To the contrary, they affirmatively demonstrate that defendants were familiar with the import of the rule. The "no knowledge" requirement of § 78ff(a) is not met by proof that defendants did not know that their specific conduct was within the prohibition of the rule.

---

7. (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or intruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

8. (a) It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, or for any member of a national securities exchange—

\* \* \* \* \*

(2) To effect, alone or with one or more other persons, a series of transactions in any security registered on a national securities exchange creating actual or apparent active trading in such security or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others.

By pleading guilty to the charges heretofore quoted, defendants admitted that they knew securities fraud was prohibited, which is the substance of Rule 10b–5. No more knowledge is required.

For the foregoing reasons, which to the extent they may be in conflict therewith, supersede those given orally from the bench, I find that neither defendant is entitled to the benefit of the limitation of punishment clause of 15 U.S.C. § 78ff(a). Accordingly, each of the motions before the Court is denied.