[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 3, 2011
JOHN LEY
CLERK

_____

No. 08-14187

_____

D. C. Docket No. 02-60012-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PAUL JOHNSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 3, 2011)

Before EDMONDSON, PRYOR and BARKSDALE,* Circuit Judges.

_____

*Honorable Rhesa H. Barksdale, United States Circuit Judge for the Fifth Circuit, sitting by designation.

PER CURIAM:

Paul Johnson appeals his sentence. The sentence came after this Court affirmed his convictions for multiple counts of securities fraud, money laundering, and perjury. See United States v. Johnson, 440 F.3d 1286 (11th Cir. 2006). Johnson argues in this present appeal that the District Court erred in applying the November 2001 United States Sentencing Guidelines (instead of an earlier version of the Guidelines) and that the District Court erred in sentencing him to prison for his securities-fraud convictions despite the "nonimprisonment" provision in 15 U.S.C. § 78ff(a). We affirm the sentences.

## I. BACKGROUND

This case involves a capital-investment scheme in which Defendant/Appellant Paul Johnson procured over $15 million from hundreds of investors through multiple private stock offerings between 1997 and 2000. Contrary to Johnson's representations to investors that their investments would be used exclusively for financing and operating Link Express Delivery Solutions (LEDS), a package delivery service, Johnson absconded with over $5.5 million for his personal use.

After LEDS' dissolution in 2000, Johnson encouraged the original LEDS

2

investors to invest in Link Worldwide Logistics (LWL), a similar business, by paying $5 per share to convert their shares or by exchanging their shares free of charge and making an additional investment in LWL. Johnson then used LWL to purchase a third business, Pony Express, which Johnson operated -- and took cash from for his personal use -- until Johnson's arrest in 2002.

## II. DISCUSSION

### A.

First, Johnson argues that the District Court violated the Ex Post Facto Clause of the United States Constitution when it used the November 2001 Sentencing Guidelines, instead of an earlier version, to calculate Johnson's sentence. Had the District Court applied an earlier version, the applicable sentencing guidelines range would have been significantly lower.[1]

The "one-book rule" provides that all aspects of a convicted defendant's sentence will be calculated from a single version of the Sentencing Guidelines.

---

[1] Johnson also argues more generally that the District Court erred in failing to give Johnson a proper de novo sentencing on remand. This claim is meritless; contrary to Johnson's contentions, the District Court considered Johnson's sentencing objections on the merits and rejected them.

United States v. Bailey, 123 F.3d 1381, 1403-04 (11th Cir. 1997). In general, a defendant's sentence is based upon the Sentencing Guidelines in effect on the date that the defendant is sentenced. Id. at 1403. But, if application of the Sentencing Guidelines in effect on the date of sentencing would violate the Ex Post Facto Clause,[2] "then the district judge must use the Sentencing Guidelines Manual that was in effect on the date that the crime was committed." Id. Where a defendant commits related crimes in a series, the date of the crime at the end of the series governs the date of the Sentencing Guidelines to be used. Id. at 1404-05; see also U.S. Sentencing Guidelines Manual § 1B1.11(b)(3). "Thus, a defendant knows, when he continues to commit related crimes, that he risks sentencing for all of his offenses under the latest, amended Sentencing Guidelines Manual." Bailey, 123 F.3d at 1405.

We conclude that the District Court correctly selected the November 2001 Sentencing Guidelines as the basis for calculating Johnson's sentence; thus, no Ex Post Facto Clause violation is involved. The District Court applied the November 2001 Guidelines because the Count 16 perjury conduct occurred on 27 November 2001 and the Count 17 perjury conduct occurred on 20 December 2001 -- both after 1 November 2001. In addition, in the Presentence Investigation Report, the Count 16

---

[2] Briefly stated, a sentencing scheme violates the Ex Post Facto Clause if the scheme was "enacted after the commission of the crime and before sentencing, and its application results in a more onerous penalty." Id. at 1403 n.32.

perjury conviction was correctly grouped with the securities-fraud conspiracy count and the substantive securities-fraud counts. As we stated in Bailey, closely related counts are to be grouped together; and the Guidelines in effect at the time of the last of those acts apply to the entire group. See 123 F.3d at 1404-05.

We find unpersuasive Johnson's arguments that Johnson's (and the original investors') involvement in the business ventures that succeeded LEDS -- that is, LWL and Pony Express -- or Johnson's November 2001 commission of perjury should be considered discrete acts unrelated to his securities fraud involving LEDS. To the contrary, Johnson's illegal use of the investors' funds connected to LWL and Pony Express related back to, and the funds were generated from, the scheme Johnson originated with the LEDS business. In addition, Johnson's perjury was clearly an attempt to further the underlying purpose of Johnson's fraudulent scheme that began with LEDS and that was continued through LWL and Pony Express. The District Court made no error in viewing these on-going activities as a connected series of wrongful acts with the common purpose of enriching Johnson at his investors' expense. And, thus, the District Court made no error in applying the November 2001 Guidelines.[3]

---

[3] Because we conclude that the District Court used the correct Sentencing Guidelines, we need not reach Johnson's constitutional arguments about an Ex Post Facto Clause violation.

5

B.

Johnson also raises several arguments arising out of 15 U.S.C. § 78ff, which provides criminal penalties for securities-fraud violations. Johnson contends that the District Court erred in sentencing him to imprisonment for his securities-fraud convictions.

Section 78ff provides, in pertinent part, the following criminal penalties:

(a) Willful violations; false and misleading statements

> Any person who willfully violates any provision of this chapter . . . shall upon conviction be fined not more than $5,000,000, or imprisoned not more than 20 years, or both, except that when such person is a person other than a natural person, a fine not exceeding $25,000,000 may be imposed; but no person shall be subject to imprisonment under this section for the violation of any rule or regulation if he proves that he had no knowledge of such rule or regulation.

15 U.S.C. § 78ff(a) (emphasis added).

First, Johnson argues that the District Court clearly erred in finding that Johnson made an insufficient showing that he lacked knowledge of the securities laws and regulations. We see no clear error in the District Court's determination that Johnson failed to demonstrate a lack of knowledge of the pertinent securities laws and regulations. Despite having the burden of persuasion, Johnson at his sentencing introduced no evidence of his ignorance beyond an invitation for the District Court to

6

credit the earlier testimony of Johnson's lawyer: the lawyer said he had no specific recollection of discussing Rule 10b-5 with Johnson before Johnson's arrest. The District Court committed no clear error in finding that "[w]hether or not [Johnson] knew the number of the rule . . . he clearly knew what the securities laws were about." See, e.g., United States v. Schwartz, 464 F.2d 499, 509 n.16 (2d Cir. 1972) ("Proof of no knowledge of the rule can only mean proof of an ignorance of the substance of the rule, proof that they did not know that their conduct was contrary to law.") (emphasis added and internal quotation marks omitted). Sufficient evidence existed in the trial record to support the District Court's finding that Johnson was aware of the general substance of the securities laws and regulations.

Second, Johnson argues that the District Court violated Apprendi v. New Jersey, 120 S. Ct. 2348 (2000), when the District Court judge -- instead of the jury -- made specific factual findings at sentencing about Johnson's knowledge of securities laws and regulations. In Apprendi, the Supreme Court concluded that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 2362-63.

We reject Johnson's Apprendi-based argument about Section 78ff. As we read the plain text of the statute, the nonimprisonment provision of Section 78ff makes no

increase in the penalty for a securities violation beyond the statutory maximum; instead, a defendant's claim of lack of knowledge is a partial affirmative defense to imprisonment -- not an element of the underlying crime. See United States v. Tarallo, 380 F.3d 1174, 1192 (9th Cir. 2004) ("[Section 78ff's] partial affirmative defense can mitigate a defendant's sentence, but is not an additional element that can increase the sentence."). Therefore, Apprendi creates no requirement that a jury decide the extent of Johnson's knowledge of the securities laws and regulations.

Last, Johnson argues that Section 78ff(a) is facially unconstitutional because it violates due process by placing the burden of proof on the defendant to show lack of knowledge. Because Defendant failed to raise this claim in the District Court, we review it under the plain error standard set forth in Federal Rule of Criminal Procedure 52(b).

We may correct a plain error when "(1) an error has occurred, (2) the error was plain, and (3) the error affected substantial rights." United States v. Lewis, 492 F.3d 1219, 1222 (11th Cir. 2007). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if . . . the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. Because knowledge of securities laws and regulations is a partial affirmative defense instead of an element of the offense here, the District Court committed no plain error

8

in its application of Section 78ff.  <u>See</u> <u>United States v. Deleveaux</u>, 205 F.3d 1292, 1298-99 (11th Cir. 2000) ("If . . . a defendant asserts an affirmative defense that does not negate any element of the offense, the defendant may be required to prove that defense by a preponderance of the evidence.").

AFFIRMED.