# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3482

_____

United States of America

*Plaintiff - Appellee*

v.

Bryan S. Behrens

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: January 15, 2013
Filed: April 25, 2013

_____

Before RILEY, Chief Judge, COLLOTON and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Bryan Behrens pled guilty to one count of securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5 ("Rule 10b-5"). The district court[1] sentenced Behrens to five years' imprisonment, three years of supervised release, and

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

restitution in the amount of $6,841,921.90. Behrens appeals his sentence, arguing that because he had no knowledge his conduct violated Rule 10b-5, imprisonment is not a permissible sentencing option. We affirm the district court's sentence.

## I.

Behrens owned and operated 21st Century Financial Group, Inc., a life insurance agency and financial investment advising business. He later expanded his business dealings by becoming the sole owner and operator of National Investments, Inc. ("NII"). Behrens promoted NII to his clients as a safe and lucrative investment opportunity. In exchange for their loans to NII, Behrens issued the investors promissory notes, which indicated the bearer would receive a seven to nine percent fixed rate of return. However, Behrens did not invest NII's funds in real estate as promised. Instead, he effectuated a Ponzi scheme, using investor funds to prop up his other business interests and support his profligate spending habits. After an SEC investigation, a federal grand jury returned a twenty-one-count indictment in April 2009.

Behrens and the Government reached a plea agreement, but it did not include a provision regarding Behrens's final sentence. The presentence investigation report calculated the advisory guidelines imprisonment range as 121-151 months. At the sentencing hearing, Behrens argued he was ineligible for imprisonment under § 78ff(a)'s "no knowledge" defense. Section 78ff(a) imposes criminal liability for "[w]illful violations" of securities laws or SEC rules or regulations but allows defendants who prove they had "no knowledge" of the rule or regulation they violated to avoid imprisonment:

> Any person who willfully violates any provision of this chapter . . . or any rule or regulation thereunder . . . shall upon conviction be fined not more than $5,000,000, or imprisoned not more than 20 years . . . but no

person shall be subject to imprisonment under this section for the violation of any rule or regulation if he proves that he had no knowledge of such rule or regulation.

The district court initially ruled that the "no knowledge" defense applies only to those convicted of violating SEC rules, rather than securities statutes, and because Behrens had pled guilty to violating the latter (§ 78j(b)), he accordingly could not take advantage of the "no knowledge" provision. We vacated the district court's imposition of sixty months' imprisonment, holding that individuals who are charged with violating both § 78j(b) and Rule 10b-5 are still "entitled to assert the no-knowledge defense to imprisonment at sentencing" because one of the elements of the conduct proscribed by § 78j(b) is the violation of an SEC rule or regulation.[2] *United States v. Behrens*, 644 F.3d 754, 757 (8th Cir. 2011). We noted that Behrens bore the "burden of showing no knowledge" and remanded the matter to the district court for consideration of that question in the first instance. *Id.*

On remand, the district court imposed the same sentence. The court found that, because Behrens "was aware of the verbatim provisions of Rule 10b-5 and that they proscribed illegal conduct," he could not meet his burden of proving he had no knowledge of Rule 10b-5. On appeal, Behrens argues that even if he was aware of the provisions of Rule 10b-5 as they relate to securities, he can still obtain shelter under the "no knowledge" defense if he can show that he did not know the promissory notes he issued through NII constituted securities within the scope of Rule 10b-5. In effect, Behrens insists he had "no knowledge" of Rule 10b-5 because he was ignorant of its applicability to his conduct. The Government, in contrast, interprets the no-knowledge provision as allowing Behrens to avoid prison only if he

---

[2] 15 U.S.C. § 78j(b) prohibits the "use or employ[ment], in connection with the purchase or sale of any security[,] . . . [of] any manipulative or deceptive device or contrivance in contravention of [SEC] rules and regulations."

can show by a preponderance of the evidence that he was unaware of Rule 10b-5's very existence.

## II.

"As with any question of statutory interpretation, our analysis begins with the plain language of the statute." *Behrens*, 644 F.3d at 755 (quoting *United States v. Jeanpierre*, 636 F.3d 416, 425 (8th Cir. 2011)). The level of knowledge referenced in § 78ff(a)'s "no knowledge" defense to imprisonment is a matter of first impression for us, but we do not approach this topic upon a blank slate. "Statutory language must be read in context and a phrase 'gathers meaning from the words around it.'" *Jones v. United States*, 527 U.S. 373, 389 (1999) (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)). Section 78ff(a) first makes imprisonment a possibility for "[a]ny person who willfully violates" an SEC rule or regulation but then carves out a safe harbor for those with "no knowledge of such rule or regulation." We have interpreted "willfully violates" in this context as requiring proof of "the intentional doing of the wrongful acts," but not as requiring proof that the defendant knew of a particular securities law or SEC rule prohibiting his actions. *United States v. O'Hagan*, 139 F.3d 641, 647 (8th Cir. 1998); *accord United States v. Tarallo*, 380 F.3d 1174, 1187 & n.3 (9th Cir. 2004). "A person can willfully violate an SEC rule even if he does not know of its existence," so long as "the act be wrongful under the securities laws" and "the knowingly wrongful act involve a significant risk of effecting the violation that has occurred." *United States v. Peltz*, 433 F.2d 48, 54-55 (2d Cir. 1970). In order for it to be meaningful, then, the "no knowledge" defense must offer at least some but not all of these willful violators the added protection of avoiding imprisonment. *Cf. Ratzlaf v. United States*, 510 U.S. 135, 140-41 (1994) (describing how judges should "hesitate" to treat statutory terms as surplusage). The question before us concerns the precise scope of this subset.

There is some initial appeal to the Government's plain meaning interpretation of "no knowledge of such rule or regulation" as requiring a complete absence of knowledge of the pertinent SEC rule or regulation; in other words, no knowledge of its very existence. However, language from the Supreme Court's opinion in *United States v. O'Hagan*, 521 U.S. 642 (1997), indicates we should read the no-knowledge provision more broadly. *O'Hagan* involved whether trading on misappropriated information violated Rule 10b-5 because it constituted "deceptive" conduct "in connection with" securities transactions. *Id.* at 653. After concluding that such conduct did violate Rule 10b-5 and therefore could lead to criminal liability under § 78ff(a), the *O'Hagan* Court characterized the "no knowledge" defense as one of two "sturdy safeguards Congress has provided regarding scienter" for criminal convictions for securities fraud. *Id.* at 665. If the "no knowledge" defense to imprisonment were available only to those who deal in securities with a complete lack of awareness of the existence of an SEC rule or regulation, it would hardly be a "sturdy safeguard[] . . . regarding scienter." As a result, "no knowledge" cannot be limited, as the Government urges, to no knowledge of the existence of the pertinent SEC rule or regulation.

At the same time, there is little support for Behrens's highly specific interpretation of "no knowledge" as no knowledge that one's conduct actually violates the particular SEC rule he is convicted of transgressing. The meaning of "willfully violates" in § 78ff(a) is consistent with the traditional principle that "ignorance of the law is no excuse." *Bryan v. United States*, 524 U.S. 184, 193-96 (1998) (rejecting petitioner's proposed definition of the willfulness requirement in 18 U.S.C. § 924(1)(D) as creating an exception to this traditional rule by "requir[ing] knowledge of the law"). The "no knowledge" defense, by requiring some level of regulatory awareness, undeniably departs from this traditional rule; the only question is how broadly the exception sweeps. We will not "interpolate words into a statute when the Congress has not seen fit to use such words itself." *Ark. Valley Indus., Inc. v. Freeman*, 415 F.2d 713, 718 (8th Cir. 1969). Section 78ff(a) does not say that

defendants can avoid imprisonment if they can prove they had no knowledge that their conduct actually violated the pertinent SEC rule or regulation. If Congress so intended, it could have chosen to say, for example, that no person shall be imprisoned "if he proves that he had no knowledge *he was violating* such rule or regulation." Instead, § 78ff(a) simply speaks of "no knowledge of such rule or regulation." Therefore, we believe the better reading of the no-knowledge provision is to allow individuals to avoid a sentence of imprisonment if they can establish that they did not know the substance of the SEC rule or regulation they allegedly violated, regardless of whether they understood its particular application to their conduct.

Our interpretation accords with the majority of other courts to have addressed the issue. The Ninth Circuit has reviewed a similar challenge to the mens rea required under the "no knowledge" defense. *United States v. Reyes*, 577 F.3d 1069, 1080-82 (9th Cir. 2009). After concluding that the jury convicted one of the defendants of violating Rule 13b2-1, which prohibits the falsification of books and records, the district court at sentencing had to determine whether the defendant fell within the purview of the "no knowledge" defense. *Id.* at 1074. The analogue to the Government's suggested interpretation of the no-knowledge provision would have been to ask whether the defendant was aware of the existence of Rule 13b2-1; the analogue to Behrens's suggested interpretation would have been to ask whether the defendant knew that her conduct violated Rule 13b2-1. In lieu of either approach, the district court identified the relevant question as "whether [the defendant] has satisfied her burden of proving by a preponderance that she was unaware of a SEC rule or regulation prohibiting the falsification of books and records." *Id.* at 1081 (quoting *United States v. Jensen*, 537 F. Supp. 2d 1069, 1075 (N.D. Cal. 2008)). The Ninth Circuit confirmed "[t]his was the proper formulation," *id.*, in effect approving the interpretation of "no knowledge" we adopt today.[3] A defendant seeking to take

---

[3]The *Reyes* court went on to cite *United States v. Schwartz*, 464 F.2d 499 (2d Cir. 1972), for the proposition that proof of "no knowledge" "can only mean proof

advantage of the no-knowledge provision need not prove that he was unaware of the existence of the SEC rule or regulation he is accused of violating, but it is insufficient to show that, although he was aware of the substance of a rule, he simply did not know that it applied to his particular course of conduct. Instead, a defendant will succeed in establishing the no-knowledge defense if he can show that he had no knowledge of the substance of the SEC rule or regulation he is convicted of violating. *See also United States v. Johnson*, 413 F. App'x 151, 154-55 (11th Cir. 2011) (affirming imposition of prison sentence where sufficient evidence indicated that the defendant "was aware of the general substance of the securities laws and regulations" he had been convicted of violating).

This rule protects from imprisonment individuals who truly are unaware of the substance of an SEC rule or regulation, but it does not go so far as to completely

of an ignorance of the substance of the rule, proof that the defendant did not know that [his or her] conduct was contrary to law." *Reyes*, 577 F.3d at 1081 (alteration in original) (quoting *Schwartz*, 464 F.2d at 509 n.16). This sentence contains mixed signals. While the former clause appears to be a straightforward summary of the "substance rule" we adopt today, the latter clause could be read as advancing Behrens's proposed interpretation of the no-knowledge provision. We nonetheless interpret the Ninth Circuit as adopting the substance rule for two reasons. First, as described above, the *Reyes* court specifically approved the district court's analysis, which was most closely aligned with the substance rule. Second, this sentence's original context indicates that the first clause more accurately reflects the tenor of the intended rule. *Schwartz* involved the mens rea required to satisfy the "willfully violates" requirement of § 78ff(a). The Second Circuit added the aforementioned sentence to a footnote, lifting it from *United States v. Lilley*, 291 F. Supp. 989 (S.D. Tex. 1968). After this remark, the *Lilley* court went on to explain, "The 'no knowledge' requirement of § 78ff(a) is not met by proof that defendants did not know that their specific conduct was within the prohibition of the rule," rather, the critical question is whether the "defendants were familiar with the import of the rule." *Lilley*, 291 F. Supp. at 993. Because "the defendants admitted that they knew securities fraud was prohibited, which is the substance of Rule 10b-5," they could be imprisoned; "[n]o more knowledge [was] required." *Id.* at 994.

vitiate the principle that ignorance of the law is no defense. Behrens asks that we fully depart from this principle and hold that only those with a specific intent to violate a particular SEC rule or regulation are eligible for imprisonment. In certain narrow circumstances, such as when interpreting criminal tax statutes, the Supreme Court has adopted such a definition of the term "willfully." *See, e.g., Cheek v. United States*, 498 U.S. 192, 200-02 (1991) (holding that willfully "requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty"). The difference between the mens rea requirement the Court adopted in *Cheek* and the one we adopt today is that under our interpretation of the "no knowledge" defense, a defendant cannot raise a claimed good faith misunderstanding of the duties imposed on him, so long as he understands the substance of the SEC rule he was convicted of violating. To the extent the Court's heightened mens rea requirement in criminal tax cases is driven by concerns related to the risks of "convicting individuals engaged in apparently innocent activity," *Bryan*, 524 U.S. at 195, the same fears do not animate our interpretation of the no-knowledge provision. For the most part, we are not confronted with "average citizen[s]" who must struggle to understand "the extent of the duties and obligations imposed by" securities laws. *Cf. Cheek*, 498 U.S. at 199-200. Individuals must pass licensing exams in order to lawfully deal in securities and related products; Behrens himself held four securities licenses (Series 6, 26, 63, and 65). For those laymen who—intentionally or otherwise—dabble in securities and run afoul of SEC rules or regulations, their rudimentary training would tend not to provide them with the requisite knowledge of the substance of the regulatory provisions they violated, therefore protecting them from imprisonment. Behrens's interpretation would offer added protection primarily to relatively savvy individuals who have a baseline understanding of SEC rules and regulations but who claim to misunderstand some nuanced application of these rules. The purpose of the no-knowledge provision is certainly to "soften[] the impact of the common-law

presumption" that "mistake of law is no defense," *cf. id.* at 199, but Behrens's interpretation deviates too far from this deeply rooted principle.[4]

Behrens, therefore, is ineligible for a term of imprisonment if he can prove by a preponderance of the evidence that he had no knowledge of the substance of Rule 10b-5. We review the district court's factual findings for clear error. *United States v. Hyatt*, 207 F.3d 1036, 1038 (8th Cir. 2000). During the resentencing hearing, the Government questioned Behrens about each of Rule 10b-5's subsections.

> Q [Government]. Right. In any event, based on your experience, you knew that it was illegal to fraudulently take money from investors in connection with the purchase or sale of a security, didn't you?
>
> A [Behrens]. Yes.
>
> Q. You knew that it was illegal to make a misrepresentation of a material fact or an omission of a material fact related to the sale or purchase of a security, didn't you?
>
> A. As it relates to a security, yes.

---

[4]"Canons of interpretation 'are quite often useful in close cases . . . .'" *Corley v. United States*, 556 U.S. 303, 325 (2009). One such canon is to interpret a statute in a way that "will advance [Congress's] remedy and repress the wrong" Congress sought to correct. *Stevens v. Nave-McCord Mercantile Co.*, 150 F. 71, 75 (8th Cir. 1906). As other courts have explained, Congress added the no-knowledge provision to § 78ff(a) out of a "fear that the [SEC] might adopt or amend rules and regulations without notice, thereby subjecting innocent persons to a harsh criminal penalty." *Lilley*, 291 F. Supp. at 992; *accord United States v. Sloan*, 399 F. Supp. 982, 984 (S.D.N.Y. 1975). The rule we adopt today continues to "repress the wrong" by upholding § 78ff(a)'s clear purpose of dealing harshly with those convicted of securities fraud, but it also advances Congress's remedy by protecting those who can prove no knowledge of the substance of the rule or regulation they violated from serving prison time as a consequence of their misconduct.

Q. You know that it was illegal to engage in a course of conduct which operates as a fraud or deceit upon a person relating to the purchase or sale of a security, didn't you?

A. As it relates to securities, yes.

Q. And you know that—do you know what I've just read to you is Rule 10b-5?

A. As it relates to securities.

Based on Behrens's responses, the district court concluded that Behrens "had knowledge of the existence of a SEC rule or regulation addressing the illegal conduct memorialized in the provisions of 10b-5." His admissions are sufficient to support the district court's conclusion that Behrens had knowledge of the substance of Rule 10b-5. *See Lilley*, 291 F. Supp. at 993-94 ("[D]efendants were familiar with the import of the rule. . . . [D]efendants admitted that they knew securities fraud was prohibited, which is the substance of Rule 10b-5. No more knowledge is required."). It is of no moment that, as Behrens claims, he did not know NII's promissory notes were securities for purposes of Rule 10b-5, because we refuse to go so far as to hold that Behrens had "no knowledge" so long as he did not know that his specific conduct actually violated Rule 10b-5. Behrens admitted to knowing the substance of Rule 10b-5, and this removes him from the protection of the no-knowledge provision.

Because Behrens failed to carry his burden of showing that he had no knowledge of the substance of Rule 10b-5, we affirm the district court's sentence of imprisonment.

_____

-10-