**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3549
_____

UNITED STATES OF AMERICA

v.

STEVEN FISHOFF,
                                    Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D. C. Criminal No. 3-15-cr-00586-001)
District Judge:  Honorable Michael A. Shipp

_____

Submitted under Third Circuit LAR 34.1(a)
on July 8, 2019

Before:  MCKEE, ROTH and RENDELL, <u>Circuit Judges</u>

(Opinion filed: January 30, 2020)

Daniel T. Brown

Murphy & McGonigle
1001 G Street, NW
Seventh Floor
Washington, DC 20001

Counsel for Appellant


Mark E. Coyne
John F. Romano
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

Counsel for Appellee

---

O P I N I O N

---


**ROTH**, Circuit Judge:

Under Section 32 of the Securities Exchange Act, a defendant who violates a Security and Exchange Commission (SEC) rule or regulation but proves that he "had no knowledge of such rule or regulation" is not subject to imprisonment.[1] The rule is intended to protect laypersons

---

[1] 15 U.S.C. § 78ff(a).

who commit technical violations.[2]  This case requires us to determine the precise burden on a defendant who wishes to use the so-called "non-imprisonment defense."  We hold that a defendant can establish lack of knowledge and avoid imprisonment if he demonstrates, by a preponderance of the evidence, that he did not know the substance of the rule or regulation that he violated.  Because appellant Steven Fishoff did not establish a lack of knowledge of the rule that he pled guilty to violating and because his other procedural arguments fail, we will affirm the judgment of the District Court.

# I

Fishoff began trading securities in the early 1990s.  He was a skilled trader and eventually quit his job in the clothing manufacturing sector to trade full-time.  He initially traded in partnership with a "backer," *i.e.*, an investor who provided the capital for his trading activity.  By 2009, he had earned enough money to set up his own firm, Featherwood Capital, Inc.  At Featherwood, he had one full-time employee and also worked with several independent contractors.  He controlled accounts that yielded profits between $2 and $5 million per year.  Despite his successes, Fishoff neither had any formal training in nor took any courses on the securities markets, regulations, or compliance.  Nor did he ever hold a securities or other professional license.  He operated Featherwood without any expert legal or regulatory advice.

---

[2] *See United States v. Lilley*, 291 F. Supp. 989, 992 (S.D. Tex. 1968) (citing Report of the Joint Conference Committee, 78 Cong. Rec. 10263 (1934)); *see also* 78 Cong. Rec. 8295-96 (1934) (statement of Sen. Steiwer).

One of Fishoff's practices was short-selling a company's stock in anticipation of the company making a secondary offering. Short-selling is the sale of a security that the seller has borrowed with the belief that the price of the security will drop. This enables the seller to make a profit by buying back the stock at a lower price before returning it. Secondary offerings, *i.e.*, when a public company issues and sells new shares to raise money, can cause the company's share price to decrease because the new shares dilute the value of existing shares. Not surprisingly, many traders and market researchers try to predict when a company will make a secondary offering by, for example, forecasting when a company will need an influx of cash. In order to make such a forecast, a trader will use public financial disclosures or watch for updated shelf registration statements.[3]

Although secondary offerings are confidential, a company, through its underwriter, may contact potential buyers to assess interest in the offering. Different investment banks, acting as underwriters, take different approaches in authorizing their salespeople to describe the subject company and its market capitalization. However, when a salesperson provides confidential information, such as the name of the

---

[3] Short-selling can artificially depress a stock's price. To ensure that secondary offerings reflect market forces, the SEC issued Rule 105 of Regulation M, 17 C.F.R. § 242.105, which generally prohibits the purchase of securities in secondary offerings if the purchaser engaged in short-selling of that stock within a five-day period before the offering. Although Rule 105 is not at issue here, it is the subject of certain claims in a related SEC case. *SEC v. Fishoff*, No. 13-cv-3725-MAS-DEA (D.N.J.) (filed June 3, 2015).

issuing company and the pricing and timing of the offering, the recipient of this information is considered to be "over the wall" or "OTW" and is barred by relevant law, including the SEC's Rule 10b-5-2, from trading the issuer's securities or disclosing the information to anyone else before the offering is publicly announced. Otherwise, the recipient will have an unfair advantage and be able to profit from the inside information, for example by short-selling the stock and repurchasing it after the announcement of the secondary offering, assuming the price has indeed dropped.

The criminal insider trading activity at issue in this case relates to Featherwood's practice of receiving confidential information about impending secondary offerings, *i.e.* being brought over the wall, and short-selling based on that inside information. Two of Fishoff's associates, Ronald Chernin and Steven Constantin, opened accounts at investment banking firms and cultivated relationships with investment bankers in order to receive solicitations to invest in secondary offerings. Chernin and Constantin learned about specific secondary offerings from the investment banks and agreed to keep the information confidential. They then telephoned Fishoff and told him they were "OTW" and had learned when a certain company was planning a secondary offering. Fishoff would short-sell the company's shares, later profiting by purchasing the shares after the announcement of the secondary offering, when the price had fallen. Fishoff also shared the inside information with Paul Petrello, a long-time business associate, personal friend, and former colleague at Worldwide Capital, one of Fishoff's early backers. Petrello similarly used the inside information to short-sell, and he and Fishoff split the trading profits. Petrello testified at his own plea hearing that Fishoff would send the first two letters of

the company's stock trading symbol by text message and then tell him the last two letters by phone.[4]

In November 2015, Fishoff was charged in a five-count Indictment including one count of conspiracy to commit securities fraud and four separate counts of securities fraud. He eventually pled guilty to Count 4, securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5 (Rule 10b-5), and 18 U.S.C. § 2. His plea related to the trading of stock in Synergy Pharmaceuticals, Inc. As described in the plea agreement, in the government's sentencing memorandum, and at the plea hearing, Chernin was solicited by phone to participate in Synergy's confidentially marketed secondary offering and brought over the wall on April 30, 2012. He called Fishoff a few minutes later. Featherwood started short-selling Synergy stock later the same morning via Fishoff's online trading account. The secondary offering was publicly announced on May 3, 2012.

---

[4] The government in its brief refers to Fishoff's use of "coded language" to pass along the confidential information to others. The government cites to the portion of the sentencing hearing transcript where the prosecution discussed Fishoff's and Petrello's use of coded language, including the transmittal of stock symbols in fragments. Fishoff objected at the sentencing hearing that Petrello's plea was not part of the record. However, because Fishoff did not object in his reply brief to the government's mention of the same evidence (and in fact refers to Petrello's testimony on other issues), he has waived any objection to our consideration of that evidence. *See United States v. Shaw*, 891 F.3d 441, 455 n.17 (3d Cir. 2018); *Suarez-Valenzuela v. Holder*, 714 F.3d 241, 248-49 (4th Cir. 2013).

Fishoff stipulated that he and his associates made between $1.5 and $3.5 million by short-selling Synergy stock based on the confidential information regarding the upcoming secondary offering. Fishoff also stipulated that he had breached the duty of confidentiality and trust owed to the source of the inside information and agreed that he had done so "willfully."[5]

Fishoff's sentencing took place on November 5, 2018. In his sentencing memorandum, Fishoff claimed that he had no knowledge of SEC Rule 10b5-2 and was entitled to the affirmative defense against imprisonment pursuant to Section 32 of the Securities Exchange Act. The government, in its sentencing memorandum, requested a sentence within the Guidelines range of 46 to 57 months. At the sentencing hearing, the court asked whether the parties had non-Guidelines objections to the Pre-Sentence Report. Fishoff's attorney clarified that the court was not referring to the affirmative defense of Section 32, and the court agreed and said it would hear about that "separate[ly]."[6] The court proceeded to calculate the Guidelines range of Fishoff's sentence, denied Fishoff's request for a departure, and heard Fishoff's allocution. The court also heard argument from Fishoff's counsel that a sentence of home confinement would be appropriate. Following a break, the court asked the parties if there were any clarifications for the record. Hearing none, the court proceeded to discuss the factors it needed to consider under 18 U.S.C. § 3553(a), granted a variance downward, and sentenced Fishoff to 30 months' imprisonment. The government then moved to dismiss the

---

[5] S.A. 21 (Plea Hearing Tr. 21:11-12).
[6] A131.

7

remaining counts, which the Court granted.

After the District Court announced the sentence and dismissed the remaining counts, Fishoff's attorney reminded the court that it had not addressed its Section 32 argument on the non-imprisonment defense. The court responded that it had "addressed all of the steps necessary for sentencing," and when Fishoff's attorney responded with an explanation of the affirmative defense and pointed to the relevant portion of the sentencing submission, the court stated for the record that "[a]ny motion pursuant to Section 32 of the Securities Exchange Act prohibiting imprisonment is hereby denied in its entirety."[7] Fishoff did not object. The next day, on November 6, the court issued a written order "for the sake of clarity" explaining that Fishoff had failed to establish that he was a layperson and failed to present evidence supporting his argument that he lacked knowledge of Rule 10b5-2.[8]

---

[7] A184.

[8] A18. Rule 10b5-2 sets forth "a non-exclusive definition of circumstances" in which the misappropriation theory of Rule 10b-5 would apply. Under that theory, the defendant is not an insider but an outsider who possesses inside information and owes a fiduciary duty to the source. Rule 10b5-2, which the SEC promulgated in 2000 to codify the Supreme Court's decision in *United States v. O'Hagan*, provides guidance on such cases. *United States v. McPhail*, 831 F.3d 1, 5 (1st Cir. 2016) (citing *United States v. O'Hagan*, 521 U.S. 642 (1997)). Fishoff refers to Rule 10b5-2 in his briefs, as does the District Court in its order, while the government refers to Rule 10b-5. Section 78ff(a) makes clear that a defendant must demonstrate a lack of knowledge *of the rule he violated* in order to avail himself of the affirmative defense. Because

This appeal followed. Fishoff raises three main arguments. First, he argues that the District Court violated Federal Rule of Criminal Procedure 32 by failing to make factual findings at sentencing and improperly curtailing his argument on the affirmative defense. Second, he argues that the government may not oppose his request on appeal because it was silent with respect to the affirmative defense in the course of the proceedings below. Third, he urges us to overturn the District Court's ruling that he did not demonstrate a lack of knowledge of the rule he violated. We discuss each in turn.

---

Fishoff pled guilty to violating Rule 10b-5, the relevant rule in this case is Rule 10b-5. In any event, Rule 10b5-2 does not stand alone as a source of liability; as a special case of insider trading, it assumes the other relevant elements of that charge are present. *See* 17 C.F.R. § 240.10b5-2(a) ("This section shall apply to any violation of . . . § 240.10b-5 . . . ."); *see also United States v. Knueppel*, 293 F. Supp. 2d 199, 204 (E.D.N.Y. 2003) ("Whether or not defendants knew that they faced potential prosecution under a theory labeled by lawyers as the 'misappropriation theory,' they pled guilty to [conspiracy to commit securities fraud]."). For that reason, defendants in misappropriation cases are simply charged with violating Rule 10b-5, *e.g.*, *United States v. Parigian*, 824 F.3d 5, 8 (1st Cir. 2016), or sometimes both Rule 10b-5 and Rule 10b5-2, *e.g.*, *United States v. Gansman*, 657 F.3d 85, 90 (2d Cir. 2011). To the extent that Fishoff believed he needed to demonstrate only a lack of knowledge of the misappropriation theory, he was mistaken, and to the extent that the District Court erred in this regard, any error is harmless.

**II**[9]

**A**

We first address Fishoff's argument that the District Court violated Rule 32. The purpose of Rule 32 is "threefold: (1) to allow the defendant to present mitigating circumstances, (2) to permit the defendant to present personal characteristics to enable the sentencing court to craft an individualized sentence, and (3) to preserve the appearance of fairness in the criminal justice system."[10]

Fishoff relies on two separate subsections of this rule. First, Fishoff argues that the District Court failed to make factual findings on the record in violation of Rule 32(i)(3)(B), which requires the sentencing court, "for any . . . controverted matter," to "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." The rule is "strictly enforced" and requires the court to make express findings on disputed facts or to disclaim reliance upon disputed facts.[11]

Here, the District Court did not violate Rule

---

[9] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. §§ 1291 and 3742(a).

[10] *United States v. Moreno*, 809 F.3d 766, 777 (3d Cir. 2016) (internal quotation marks omitted).

[11] *United States v. Electrodyne Sys. Corp.*, 147 F.3d 250, 255 (3d Cir. 1998).

32(i)(3)(B) by failing to rule on the affirmative defense.[12] First of all, the Court did issue a clear ruling in response to Fishoff's objection,[13] unlike in *United States v. Electrodyne Systems Corp.*, cited by Fishoff, where the record was "[a]t best . . . ambiguous as to the district court's reliance upon the disputed matters."[14] Fishoff also relies on *United States v. Metro*, but in that case, the court did not resolve a dispute about the defendant's role in the scheme because it mistakenly considered the factual dispute to be moot, when it was in fact "very much alive."[15] Here, the Court made no

---

[12] Our review of the District Court's adherence to Rule 32 is plenary. *United States v. Ward*, 732 F.3d 175, 180 n.4 (3d Cir. 2013). The government urges us to apply plain error review. We are not persuaded. The government relies on *United States v. Flores-Mejia*, 759 F.3d 253, 257 (3d Cir. 2014), in which we held that a defendant must raise any procedural objection to his sentence (such as a court's failure to give meaningful consideration to the defendant's substantive argument) after the sentence is pronounced. In that case, the parties argued for and against a variance but the court did not rule on it. The court then announced its sentence, at which point defense counsel did not object to the court's failure to rule on the variance issue. Here, the District Court announced its sentence, Fishoff objected that the court had not addressed Section 32, and the court ruled on the objection. In this manner, then, the court ruled on the affirmative defense.

[13] A184 ("Any motion pursuant to Section 32 of the Securities Exchange Act prohibiting imprisonment is hereby denied in its entirety.").

[14] 147 F.3d 250, 255 (3d Cir. 1998).

[15] 882 F.3d 431, 442 (3d Cir. 2018).

11

such mistake.

Moreover, to the extent the Rule requires express findings on the viability of the affirmative defense, we find a clear statement of the court's findings in its rejection of the defense. As the Ninth Circuit held in *United States v. Laurienti*, by rejecting the affirmative defense without providing specific reasons, the court "necessarily found he knew of the [SEC] rule" he was charged with violating.[16] Finally, even if there was error, it is evident from the court's November 6 ruling that any further explanation on the part of the court would not have changed the sentence it imposed. Thus, any error is harmless.

Second, Fishoff argues that the District Court improperly curtailed his argument on the affirmative non-imprisonment defense at sentencing in violation of Rule 32(i)(4)(A). That subsection requires the court, "[b]efore imposing sentence," to "provide the defendant's attorney an opportunity to speak on the defendant's behalf" and "address

---

[16] 731 F.3d 967, 972 (9th Cir. 2013); *see also United States v. Campbell*, 295 F.3d 398, 406 (3d Cir. 2002) (holding that the district court fulfilled its obligation to make factual findings on controverted matters by stating that the disputed portions of the presentence report were supported by a preponderance of the evidence); *cf. United States v. Zehrung*, 714 F.3d 628, 632 (1st Cir. 2013) (sentencing court may "implicitly" resolve factual disputes when its statements and the sentence "show[] that the facts were decided in a particular way" as long as both the findings and the basis for the findings are clear enough "to permit effective appellate review" (internal quotation marks omitted)).

the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence."

We see no plain error violation of this subsection of Rule 32.[17] As an initial matter, the sentencing court "has always retained the discretion to place certain restrictions on what may be presented during an allocution."[18] Here, Fishoff submitted an extensive sentencing memorandum, which included a section on the non-imprisonment defense, as well as 38 letters of support, a DVD, and a letter from Fishoff. At the hearing, the court heard lengthy arguments from Fishoff's counsel, who at several points requested a sentence of home confinement. The court addressed Fishoff personally and Fishoff himself spoke at length. This case is unlike those relied upon by Fishoff, such as *United States v. Chapman*, where the district court refused a continuance so that the defendant, who had mistakenly not been notified of the day of sentencing, could gather letters from family members and prepare for allocution.[19] This case is also unlike those in which we have found error because the sentencing court infringed on the right of the defendant to allocute.[20] Finally,

---

[17] Fishoff did not object at sentencing that the court was interfering with his right to present information. We thus review for plain error only. *Moreno*, 809 F.3d at 777.

[18] *Ward*, 732 F.3d at 182; *see also* U.S.S.G. § 6A1.3 cmt. ("When a dispute exists about any factor important to the sentencing determination, the court must ensure that the parties have an adequate opportunity to present relevant information. Written statements of counsel or affidavits of witnesses may be adequate under many circumstances.").

[19] 915 F.3d 139, 144-47 (3d Cir. 2019).

[20] *E.g.*, *Moreno*, 809 F.3d 766.

13

it is clear from the November 6 order that oral argument on the affirmative defense would not have made a difference in Fishoff's sentence. Thus, any error did not affect his substantial rights.[21]

We do not condone the practice of telling defense counsel that they will be permitted to argue for an affirmative defense at sentencing and then denying the defense without oral argument. Nevertheless, Fishoff was able to present his defense adequately, and the court's ruling on it was sufficient. Furthermore, as discussed below,[22] Fishoff's arguments that he was entitled to the defense are not persuasive. For those reasons we hold that the court did not violate Rule 32.

**B**

We next address Fishoff's argument that the government was silent in the face of his affirmative defense below and therefore should, on appeal, not be permitted to argue against it. Fishoff points out that the government responded to other portions of his sentencing memorandum, thereby demonstrating "that it was fully capable of advising" the court on matters affecting sentencing, but that it failed to do so with respect to his affirmative non-imprisonment defense. His argument fails for two reasons.

First, by requesting a sentence of imprisonment within the Guidelines range of 46 to 57 months, the government was necessarily opposing Fishoff's argument that he should not be sentenced to prison. As the government points out, it

---

[21] *See* Fed. R. Crim. P. 52(b).
[22] *Infra* Part II.C.

14

submitted its sentencing memorandum before Fishoff submitted his; the court did not require or permit supplemental briefing before sentencing, merely the filing of supplemental documents. Nor did the court elicit the government's views on the matter at sentencing. To be sure, the government could have volunteered its position at the hearing. But even if the government did not provide its explicit view on the matter, its request for a sentence of imprisonment clearly demonstrated its position—that Fishoff was not entitled to the defense.[23]

Second, as other circuits have made clear, when a criminal defendant appeals, the government is "tasked, in effect, with defending the district court's judgment."[24] This is so even when the government agreed to a sentencing adjustment that the district court did not award.[25] Although we have not addressed this exact issue, we held in *United States v. Griswold* that the government may defend the

---

[23] The cases cited by Fishoff do not require a contrary result. In *United States v. Weatherspoon*, 696 F.3d 416, 421-22 (3d Cir. 2012), we held that the government was barred from arguing for the first time on appeal that a defendant could not file a second motion pursuant to 18 U.S.C. § 3582(c)(2). Here, by contrast, the government necessarily opposed the motion. The second case, *United States v. Schiff*, 602 F.3d 152 (3d Cir. 2010), is distinguishable because the government in that case took a position on appeal that contradicted several express statements it made below. There were no such express statements here.

[24] *United States v. Carbajal-Valdez*, 874 F.3d 778, 786 (1st Cir. 2017).

[25] *Huff v. United States*, 734 F.3d 600, 610 (6th Cir. 2013).

district court's factual finding with respect to a defendant's offense level even if the government stipulated to contrary facts in the plea negotiation.[26] Here, the plea agreement explicitly reserved the government's right (and Fishoff's right) to take any position on appeal.[27] Moreover, the government never agreed that the non-imprisonment defense applied.

For these reasons, Fishoff's preclusion argument lacks

merit.

## C

We turn, last, to Fishoff's argument that the District Court erred in finding that he did not meet his burden of demonstrating a lack of knowledge of the substantive SEC Rule he pled guilty to violating. We review the District Court's factual findings for clear error.[28] In doing so, we do not find clear error simply because "there are two permissible views of the evidence."[29]

We have not previously had occasion to interpret the non-imprisonment defense of Section 32. Other circuits have done so and we find their analyses helpful, especially the

---

[26] 57 F.3d 291, 298-99 (3d Cir. 1995).

[27] Except that neither side could argue on appeal that the sentencing court erred in accepting the factual stipulations.

[28] *United States v. Grier*, 475 F.3d 556, 561 (3d Cir. 2007) (en banc).

[29] *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985).

reasoning of the Eighth Circuit in *United States v. Behrens*.[30] In that case, the Eighth Circuit rejected the defendant's view that the non-imprisonment defense is available to one who shows that he did not know that the rule in question applied to his conduct (even if he was aware of the rule).[31] The court also rejected the government's view that the non-imprisonment defense is only available to a defendant who can show "a complete absence of knowledge" of the rule's "very existence."[32] The court instead drew a middle line, based on the plain language of the statute, and held that defendants must show by a preponderance of the evidence "that they did not know the substance of the SEC rule or regulation they allegedly violated, regardless of whether they understood its particular application to their conduct."[33] By requiring the defendant to demonstrate a lack of knowledge of the *substance* of the rule, the defense marks only a minor departure from the traditional principle that ignorance of the law is no excuse.[34]

---

[30] 713 F.3d 926 (8th Cir. 2013).

[31] The Eighth Circuit found that such an interpretation would create a specific intent mens rea more appropriate for, *e.g.*, criminal tax cases, which run a higher risk of "convicting individuals engaged in apparently innocent activity." *Id.* at 931 (quoting *Bryan v. United States*, 524 U.S. 184, 195 (1998)).

[32] 713 F.3d at 929.

[33] *Id.* at 930, 932.

[34] *Id.* at 931 ("This rule protects from imprisonment individuals who truly are unaware of the substance of an SEC rule or regulation, but it does not go so far as to completely vitiate the principle that ignorance of the law is no defense."); *id.* at 931-32 ("The purpose of the no-knowledge provision is

We agree with the Eighth Circuit's reasoning in *Behrens* that a defendant who wishes to qualify for the non-imprisonment defense must demonstrate, by a preponderance of the evidence, that he did not know the substance of the rule that he violated. It is immaterial that a defendant does not know the exact number of the rule, and immaterial that the defendant did not specifically intend to violate the rule.[35]

Applying this construction of the defense to the case before us, we find that Fishoff did not meet his burden. He offers four main pieces of evidence.

First, he maintains that "there can be no presumption that [he] would generally have knowledge of the SEC's technical rules," and that "[n]o layperson would generally know of Rule 10b5-2."[36] But Fishoff was a full-time trader who made his living by trading stocks. Even assuming a true layperson would not be aware that insider trading is prohibited, which is a dubious proposition, we cannot credit his claim to be a layperson. He was an experienced trader

_____

certainly to 'soften[] the impact of the common-law presumption' that 'mistake of law is no defense' . . . ." (quoting *Cheek v. United States*, 498 U.S. 192, 199, (1991)) (alterations in original)).

[35] *Cf. Lilley*, 291 F. Supp. at 993 (holding that it is irrelevant that the defendant does not know "the precise number or common name of the rule, the book and page where it was to be found, or the date upon which it was promulgated").

[36] As explained above, the rule in question is the rule to which Fishoff pled guilty to violating, which here is Rule 10b-5 and not the rule setting forth the misappropriation theory (Rule 10b5-2). *See supra* n.8.

with years in the business. He had performed hundreds of thousands of trades.[37] We recognize that the illicit trades constituted a tiny fraction of the trades completed by Featherwood. But the sheer volume of normal, non-violative trading activity carried out or overseen by Fishoff merely throws into sharper relief the few trades that relied on confidential inside information. Based on his trading activity, Fishoff cannot plausibly claim, without more, that he was not a professional trader. Thus, he does not benefit from any presumption that he was unaware of insider trading rules.

Second, Fishoff points out that he has never held a securities license, worked as a registered broker/dealer, studied for any securities licensing exam, or received training in the securities laws. This evidence is an extension of his claimed non-professional status. We find it unpersuasive for the same reasons. His lack of licensure or training carries less weight in light of the fact that he made his living by trading securities; it is implausible that a professional trader like Fishoff would not know about Rule 10b-5.[38] We find no clear error in the District Court's decision that this evidence does not meet the preponderance standard.

Third, Fishoff refers to the emails he and his associates

---

[37] *United States v. D'Honau*, 459 F.2d 73, 75 (9th Cir. 1972) ("Appellant was experienced in the stock market; it is a remote possibility that he did not know the actions prohibited by 17 C.F.R. 240.10b-5 were contrary to law.").

[38] Other courts have similarly denied the defense to individuals who claimed not to have "academic" or "professional" experience. *See Knueppel*, 293 F. Supp. 2d at 204-05.

19

received from investment banks containing form confidentiality agreements and points out that these emails do not mention Rule 10b-5. This argument is meritless. The emails clearly stated that they contained confidential information, the use of which was restricted. If anything, these form confidentiality agreements should have been red flags for Fishoff that he was not permitted to trade based on the confidential information. They certainly do not demonstrate his lack of knowledge, much less meet the preponderance standard.

Fourth, Fishoff points out that he became aware of Rule 105[39] in September 2013, after the SEC brought a case against 23 individuals based on that rule. The head of Featherwood's introducing broker, Montecito, sent Fishoff copies of Rule 105 and Reg SHO on October 2, 2013 (over one year after the Synergy trades described in Count 4). Once he became aware of Rule 105, he realized some of his short-selling had violated that rule and took efforts to ensure future compliance by directing his associates to stop short-selling after being solicited by underwriters. But Rule 105 is not at issue here. Fishoff claims that he did not know that the government would consider the short-selling to violate Rule 10b-5 in addition to violating Rule 105, but that is not enough to qualify for the defense.[40] The fact that he learned of Rule 105, realized the SEC was able to enforce it, and sought to avoid such enforcement of that rule does not demonstrate that he did *not* know of Rule 10b-5. The best inference one could draw from this evidence is that Fishoff lacked knowledge of

---

[39] 17 C.F.R. § 242.105, "Short selling in connection with a public offering."

[40] *Behrens*, 713 F.3d at 929-30.

the substance of Rule 105 before October 2013. But neither his lack of knowledge of Rule 105 nor his attempts to avoid a Rule 105 enforcement action have any bearing on his knowledge of a separate rule.

In short, none of Fishoff's proffered evidence demonstrates his lack of knowledge by a preponderance of the evidence. In addition, there is enough countervailing evidence on the other side of the equation to conclude that the District Court did not clearly err. First, there is the fact that he was an experienced professional, discussed above. Second, the government points out that Fishoff told his associates to notify him of the confidential information by phone and conveyed the same information to Petrello using a code. Fishoff does not dispute the government's characterization of these communications. His attempts to conceal the scheme suggests that he was aware that it was wrong and could support an inference that he knew of a prohibition against trading on the confidential information.[41] Finally, his reluctance to hire compliance personnel, despite advice from friends who were securities professionals, indicates that on some level Fishoff was aware he was violating a securities rule—or at least risking a violation of a securities rule and choosing to disregard that risk.

In sum, we hold that the District Court did not err in ruling that Fishoff did not establish by a preponderance of the

---

[41] *United States v. Reyes*, 577 F.3d 1069, 1081-82 (9th Cir. 2009) (based on evidence of "conceal[ment]" and "directing employees to not communicate . . . over the phone or email," the district court appropriately found that the defendant had not met her burden of establishing lack of knowledge).

21

evidence a lack of knowledge of Rule 10b-5.

### III

We will affirm the judgment of sentence of the District Court.