**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

H.B., JUVENILE MALE,
          *Defendant-Appellant.*

No. 11-30099

D.C. No.
4:10-CR-00111-
SEH-2

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
April 10, 2012—Seattle, Washington

Filed August 22, 2012

Before: Dorothy W. Nelson, A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Nelson

## COUNSEL

Mark D. Meyer, Ugrin, Alexander, Zadick & Higgins, P.C., Great Falls, Montana, for the defendant-appellant.

Laura B. Weiss, Assistant U.S. Attorney, Michael W. Cotter, United States Attorney, Office of the United States Attorney, Great Falls, Montana, for the plaintiff-appellee.

## OPINION

NELSON, Senior Circuit Judge:

H.B. appeals his adjudication as a juvenile delinquent for aiding and abetting his cousin, W.B., in committing aggravated sexual abuse against their female friend, T.T.W., on an Indian reservation.[1] 18 U.S.C. §§ 5031 *et seq.*; 18 U.S.C. § 1153(a); 18 U.S.C. § 2. On appeal, H.B. claims that there was insufficient evidence to support his adjudication. In addition, H.B. contends that the district court imposed an unreasonable sentence by ordering him to spend 18 months at a juvenile correctional detention facility followed by 12 months of juvenile delinquent supervision. We disagree, and affirm the adjudication and sentence.

## I.

T.T.W. testified that, late in the evening on October 30, 2009, she went to H.B.'s house to ask for a ride home after drinking heavily with some friends at a party. The next thing T.T.W. remembers is waking up in a bed, with no pants or undergarments on, with W.B. on top of her engaging in sexual intercourse. T.T.W. then observed H.B. next to her, holding her right leg down and saying either, "I get next," or, "I get dibs." When T.T.W. realized what was happening, she started crying, told W.B. to get off of her, and said that she wanted her clothes.

At some point during the assault, while T.T.W. was crying, H.B. and W.B.'s grandfather entered the room to investigate a noise. W.B. covered T.T.W.'s mouth with his hand and the boys pulled a blanket over her to conceal her presence. W.B. "was still doing it to [her]" when the grandfather left the room.

---

[1]We use the initials "H.B.," "W.B.," and "T.T.W." to protect the identities of the individuals involved in this case, as they were all minors at the time of the offense.

Immediately after the incident, T.T.W. gathered her clothes, left the house, and went to the hospital. The registered nurse who evaluated her testified that T.T.W. had a fresh bruise on her left arm. The report from the sexual assault examination also indicated, under the patient assault history, that the method used by the assailant included "holding and pinching," which it described as "[h]olding legs apart."

On the other hand, W.B. testified that he and T.T.W. were having consensual sex when she "blanked out" and then "came to" and asked what he was doing. He further testified that she did not start crying until after he got off of her, and that they were no longer having sex when his grandfather came into the room. H.B. testified that he was watching television in his grandfather's living room at the time of the incident, and only entered the bedroom briefly to retrieve his telephone. He denied holding T.T.W.'s leg and stating either, "I get next," or, "I get dibs."

Following a one-day bench trial, the district court adjudged W.B. and H.B. to be juvenile delinquents. 18 U.S.C. §§ 5031 *et. seq.* Specifically, the district court found W.B. to be a juvenile delinquent for "knowingly us[ing] force to cause [T.T.W.] to engage in a sexual act," in violation of 18 U.S.C. § 2241(a)(1), and adjudged H.B. to be a juvenile delinquent for "knowingly and intentionally" aiding and abetting W.B. to commit the act, in violation of 18 U.S.C. § 2. The district court also found that the offense took place on the Blackfeet Indian Reservation in Montana, and that H.B. and W.B. are Native Americans. 18 U.S.C. § 1153(a). In denying W.B. and H.B.'s motions for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, the trial court acknowledged that this case involves disputed facts that rely heavily on credibility determinations, but found T.T.W.'s testimony to be more credible and consistent than that of W.B. and H.B.

At a subsequent dispositional hearing, the district court ordered H.B. to spend 18 months in detention followed by 12

months of juvenile delinquent supervision. Prior to rendering the sentence, the district court heard testimony from H.B.'s grandfather and legal guardian, listened to H.B.'s statements, and solicited comments from H.B.'s counsel and the government. H.B.'s grandfather described H.B. as an intelligent, caring individual who overcame adversity after being hit by a car when he was ten years old. When the government asked H.B.'s grandfather what type of enhanced structure he would be able to provide for H.B., should he be granted probation, H.B.'s grandfather stated only that he would be "more careful." H.B.'s grandfather also did not know any specific information about sex offender treatment programs available in the area and did not have a program set up for H.B. at the time of the hearing.

In explaining its disposition, the district court acknowledged H.B.'s positive qualities, including his intelligence and ability to graduate from high school despite adversity. The court also considered the gravity of the offense and stated that the federal Sentencing Guidelines range for an adult conviction under 18 U.S.C. §§ 1153(a) and 2 would be 235 to 293 months of confinement. The court determined that, in light of the nature of the offense, H.B. should participate in a sex offender treatment program and recommended that H.B. be placed at the Reintegrating Youthful Offenders ("RYO") Correctional Facility in Galen, Montana. According to the court, the RYO facility provides "a safe, secure, and therapeutic environment for youthful offenders in a location that is closest to the juvenile's family in Montana." Despite the request by H.B.'s counsel to impose only a 12-month sentence, the district court determined that 18 months at the RYO facility was necessary to provide H.B. with the "structure and time" to complete the sex offender treatment program and to maximize his potential rehabilitation.

H.B. filed a timely appeal.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo a trial court's denial of a Rule 29 motion for judgment of acquittal. *See United States v. Lequire*, 672 F.3d 724, 728 (9th Cir. 2012). In determining whether sufficient evidence exists to support the verdict, we must "first construe the evidence in the light most favorable to the [government], and . . . then determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Shetler*, 665 F.3d 1150, 1163 (9th Cir. 2011) (internal quotation marks and citation omitted). When viewing the evidence in the light most favorable to the government, we "may not usurp the role of the finder of fact by considering how [we] would have resolved the conflicts, made the inferences, or considered the evidence at trial." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). Therefore, in a case involving factual disputes and credibility determinations, we "must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)).

We review a juvenile delinquency sentence under the Federal Juvenile Delinquency Act for abuse of discretion. *United States v. Juvenile*, 347 F.3d 778, 784 (9th Cir. 2003).

## III.

H.B. appeals the denial of his motion for a judgment of acquittal. In order for H.B. to be adjudged a juvenile delinquent, the government was required to produce sufficient evidence to prove beyond a reasonable doubt that: (1) W.B. committed the offense of aggravated sexual abuse, 18 U.S.C. § 2241(a)(1); (2) H.B. knowingly and intentionally aided and abetted W.B. in committing each element of the aggravated offense, 18 U.S.C. § 2; (3) H.B. acted before W.B. completed the crime; *see* 9th Cir. Model Crim. Jury Instr. 5.1 (2010)

(aiding and abetting); (4) H.B. was under the age of 18 at the time of the offense, 18 U.S.C. §§ 5031 *et. seq.*; and (5) H.B. is a Native American and the offense occurred on the Blackfeet Indian Reservation, 18 U.S.C. § 1153(a).

H.B. argues on appeal that the government's evidence was insufficient to prove beyond a reasonable doubt that W.B. committed the offense of aggravated sexual abuse. Consequently, the government failed to establish the requisite elements of H.B.'s aiding and abetting charge. *See United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005) ("Aiding and abetting is not a separate and distinct offense from the underlying substantive crime, but is a different theory of liability for the same offense.").

**[1]** The crime of "aggravated sexual abuse" is proscribed in 18 U.S.C. § 2241. The statute prohibits "knowingly caus-[ing] another person to engage in a sexual act *by using force* against that other person." *Compare* 18 U.S.C. § 2241(a)(1) (emphasis added), *with* 18 U.S.C. § 2242 (sexual abuse) (prohibiting individuals from "knowingly . . . caus[ing] another person to engage in a sexual act by threatening or placing that other person in fear" or by "engag[ing] in a sexual act with another person if that other person is . . . physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act . . . ."). The definition of a "sexual act" for purposes of 18 U.S.C. § 2241(a) includes "contact between the penis and the vulva" which "occurs upon penetration, however, slight." 18 U.S.C. § 2246(2).

**[2]** To render the distinction between sexual abuse and aggravated sexual abuse meaningful, Section 2241(a)(1) "requires a showing of actual force." *United States v. Fulton*, 987 F.2d 631, 633 (9th Cir. 1993). While the statute does not define "force" or specify how much force is necessary to amount to a violation, *United States v. Lauck*, 905 F.2d 15, 17 (2d Cir. 1990), Congress has stated that:

[t]he requirement of force may be satisfied by a showing of the use, or threatened use, of a weapon; the use of such physical force as is sufficient to overcome, restrain, or injure a person; or the use of a threat of harm sufficient to coerce or compel submission by the victim.

Sexual Abuse Act of 1986, H. Rep. No. 594, 99th Cong., at 14 n.54a (2d Sess. 1986), *reprinted in* 1986 U.S.C.C.A.N. 6186, 6194 n.54a. In our few judicial decisions interpreting the term "force," we have held that, "the force requirement is met when the sexual contact resulted from a restraint upon the other person that was sufficient that the other person could not escape the sexual contact." *Fulton*, 987 F.2d at 633 (internal quotation marks and citations omitted); *United States v. Archdale*, 229 F.3d 861, 868 (9th Cir. 2000) (same); *see also United States v. Allery*, 139 F.3d 609, 611 (8th Cir. 1998) (holding that force is sufficient if it "restrain[s] the victim and allow[s] the defendant to engage in sexual contact").

**[3]** Viewing the evidence in the light most favorable to the government, a rational trier of fact could conclude that, after T.T.W. woke up from being "black[ed] out," W.B. used physical force sufficient to restrain T.T.W. and engage in an unwanted sexual act. Specifically, the record supports the reasonable inference that W.B.'s weight on top of T.T.W., combined with his efforts to silence T.T.W. by covering her mouth with his hand, and H.B.'s physical restraint of T.T.W.'s right leg, together allowed W.B. to engage in unwanted sexual contact from which T.T.W. could not escape immediately. This finding of force is bolstered by the report from the sexual assault examination taken soon after the offense, which noted that T.T.W. had a fresh bruise on her left arm following the incident. In addition, the offense involved a power disparity in which the two teenage boys acted together against T.T.W. *Cf. Archdale*, 229 F.3d at 864, 868 (finding sufficient force for aggravated sexual abuse pursuant to 18 U.S.C. § 2241(a)(1) to justify a sentencing enhancement

where the defendant, who was "six feet tall and over 200 pounds," grabbed the twelve-year old victim's head and moved it "up and down on his penis," and later "grabbed her hand above her head, and got on top of her' "); *see generally United States v. Lucas*, 157 F.3d 998, 1002 (5th Cir. 1998) (noting that "force can be implied from a disparity in size and coercive power between the defendant and his victim"). Therefore, taking the evidence in the light most favorable to the government, a rational trier of fact could conclude that W.B. used force to engage in a sexual act with T.T.W.

**[4]** In addition, a rational trier of fact could conclude that H.B. aided and abetted W.B. in committing the offense. H.B. restrained T.T.W.'s leg while W.B. had sex with her, said either, "I get next,"or, "I get dibs," and then helped W.B. in concealing T.T.W.'s presence from their grandfather. *See United States v. McDaniel*, 545 F.2d 642, 644 (9th Cir. 1976) (aiding and abetting requires "know[ing] that the activity condemned by the law is actually occurring and . . . intend[ing] to help the perpetrator.").

**[5]** While H.B. disputes some of the evidence presented by the government at trial, the district court's factual findings and legal conclusions were supported by its "credibility assessments" and the "reasonable inference[s]" it drew from the evidence. *Nevils*, 598 F.3d at 1167, 1170. Therefore, construing all of the evidence in the light most favorable to the government, a rational trier of fact could find the essential elements of H.B.'s charged offense beyond a reasonable doubt.

## IV.

H.B. also claims that the district court imposed an unreasonable sentence by ordering H.B. to spend 18 months in detention followed by 12 months of juvenile delinquent supervision. Specifically, H.B. argues that the district court failed to give meaningful consideration to the treatment alternatives

authorized by the Federal Juvenile Delinquency Act (FJDA) by placing H.B. in an overly restrictive environment for an undue period of time.

The FJDA, which authorizes federal courts to sentence juveniles, is intended to remove juveniles from the criminal justice system and, instead, encourage treatment and rehabilitation. *Juvenile*, 347 F.3d at 785. As a result, "[a] successful prosecution under the Act . . . results in a civil adjudication of status, not a criminal conviction." *United States v. Doe*, 53 F.3d 1081, 1083 (9th Cir. 1995).

In fashioning a disposition, a district court "may suspend the findings of juvenile delinquency, place [the juvenile] on probation, or commit him to official detention which may include a term of juvenile delinquent supervision to follow detention." 18 U.S.C. § 5037(a). The court also may enter an order of restitution. *Id.* When selecting among the dispositions authorized under Section 5037, the district court must exercise its discretion "in accordance with the rehabilitative function of the FJDA, which requires an assessment of the totality of the unique circumstances and rehabilitative needs of each juvenile." *Juvenile*, 347 F.3d at 787.

**[6]** In general, "the FJDA disfavors institutionalization and in particular the warehousing of young people away from their communities." *Id.* at 785; *see also* 18 U.S.C. § 5039 ("Whenever possible, the Attorney General shall commit a juvenile to a foster home or community based-facility located in or near his home community."). A district court's disposition should therefore reflect the least restrictive means of accomplishing the juvenile's rehabilitation. *Juvenile*, 347 F.3d at 787. Moreover, district courts should "give due consideration to the unique concerns and needs of [Native American youth]," as they are "disproportionately subject to federal court jurisdiction for their delinquency offenses" on account of the structure of the FJDA. *Id.* at 789 n.10.

**[7]** In this case, the record reflects that the district court considered the totality of H.B.'s unique circumstances and rehabilitative needs in rendering the disposition. The district court specifically considered H.B.'s positive qualities, the nature of the offense, H.B.'s need for sex offender treatment, and the availability of "comprehensive correctional programming and rehabilitation services available" through the RYO, the only facility of its type in the state.

**[8]** While H.B.'s counsel requested that the court impose a sentence of only 12 months in detention, which counsel argued would allow H.B. time to complete the majority of the 18-month sex offender treatment program with the remainder to be completed on an outpatient basis as necessary, the district court did not abuse its discretion in ordering H.B. to spend the full 18 months at the RYO facility. The order of detention was no longer than necessary to complete the treatment program, and therefore not overly punitive. *See id.* at 788 (finding seven-year sentence of juvenile unreasonable where the sentence exceeded what was necessary for treatment by more than five years). Moreover, without any evidence of a concrete alternative treatment plan, recommending that H.B. be placed at the RYO facility was not overly restrictive. *See* 18 U.S.C. § 5039. Finally, by emphasizing that the RYO "is [the] closest [facility] to the juvenile's family in Montana," the district court's disposition reflects consideration of the need to keep H.B. as close as possible to his family and community. *See Juvenile*, 347 F.3d at 789 (finding problematic a district court's decision to place juvenile "inordinately far from access to his family, his tribe, and the support mechanisms he had in the Fort Belknap Indian Community" without any justification). Thus, the sentence imposed by the district court was reasonable in light of the FJDA.

## V.

The district court's adjudication of H.B. as a juvenile delinquent is supported by sufficient evidence, and the sentence

imposed is reasonable. Accordingly, the district court's adjudication and sentence are

**AFFIRMED.**