**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2860
_____

UNITED STATES OF AMERICA

v.

SHAWN D. SHAW,
            Appellant
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-13-cr-00660-001)
District Judge: Honorable Esther Salas
_____

Argued: September 26, 2017
_____

Before: SMITH, <u>Chief Judge</u>, McKEE and RESTREPO,
<u>Circuit Judges</u>.

(Filed: May 30, 2018)
_____

Robert T. Pickett, Esq.        [ARGUED]
Pickett & Craig
80 Main Street, Suite 430
West Orange, NJ 07052
        *Counsel for Appellant*

Desiree L. Grace, Esq.        [ARGUED]
William E. Fitzpatrick, Esq.
Mark E. Coyne, Esq.
Office of the United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____


RESTREPO, <u>Circuit Judge</u>.

Appellant Shawn Shaw, a former corrections officer, was convicted by a jury of sexually assaulting a female inmate in violation of 18 U.S.C. § 242 and obstruction of justice in violation of 18 U.S.C. § 1512(b)(3). We will affirm.

**I**

In December 2010, E.S.[1] was a pretrial detainee incarcerated at the Essex County Correctional Facility ("ECCF" or "jail") in Newark, New Jersey. Shaw was a correctional officer employed at ECCF. Although Shaw had worked at the jail for five years, he had worked in the women's unit only a handful of times. On December 27 and 28, 2010, Shaw was asked to cover the women's unit alone during the overnight shift from 10:00 p.m. to 6:00 a.m. because the jail was short-staffed due to a snow storm.

When Shaw arrived for his shift, some of the women including E.S. "flashed" him with their buttocks as "sort of a hazing ritual to the new officer in the unit." App. 326. Shaw responded by making sexual comments to E.S., such as asking if he can "hit that," which E.S. understood to be a request to perform sexual acts. App. 327. Shaw also spoke over an intercom connected to the cell that E.S. shared with a cellmate, made explicit sexual advances, and threatened that he was "going to come in there" and "get [her] out of there." App. 329.

Shortly before 3:00 a.m. on December 28, 2010, E.S. awoke to Shaw in her cell.[2] Shaw removed E.S.'s pants, "forced himself on [her]," App. 332, by "[p]ressing down" his hand on her chest so that she was unable to get up, and digitally penetrated her vagina, App. 404. Shaw then removed his own pants and underwear and laid on top of E.S.

---

[1] The victim is herein identified only by her initials.
[2] E.S.'s cellmate testified that she remained asleep.

3

with the weight of his body. Shaw proceeded to engage in sexual intercourse with E.S. who was unable to move and "felt like [she] couldn't breathe." App. 404.[3]

E.S. did not immediately report the incident, but told a male inmate (via hand signals), her mother and her attorney. The male inmate reported the incident to the jail. When confronted, E.S. formally reported the sexual assault. She was examined by a Sexual Assault Nurse Examiner, and was found to have semen on her cervix. The Government later extracted a DNA mixture. An expert for the Government testified at trial that it was "approximately 28.9 million times more likely in the African American population" that E.S. and Shaw were the sources of the mixture, than if E.S. and a "randomly selected unrelated individual" were the sources. App. 610. Shaw is African American.

The Government also introduced electronic records of the cell doors at ECCF. The records established that E.S.'s cell door was opened on the night of the incident at 2:43:41 a.m. and closed at 2:50:39 a.m. The computer that opened the door was "TS 04" and Shaw was logged into TS 04 at that time. No one else logged into TS 04 during Shaw's overnight shift.

Jail investigators also retrieved surveillance videos. Although there was no video of either E.S.'s cell or the TS 04 work station, the videos did show Shaw going on break and returning to the women's unit slightly before the sexual

---

[3] At trial, E.S. testified that she is five feet, five inches tall and one hundred and thirty pounds; she estimated that Shaw is over six feet tall and far heavier than she.

assault. The surveillance videos refuted Shaw's intimation to investigators that he was on break during the incident.

There was, however, a complication in interpreting the video evidence: the surveillance camera clocks were not synchronized with one another or with the clock associated with the cell door records. To synchronize the time stamps *ex post*, an ECCF maintenance information technician, Delfin Neves, used "arithmetic." App. 153. Neves calculated the "difference" between each surveillance camera clock and the clock for the facility systems. App. 152.[4] He recorded the results in a chart listing the "drift" for each surveillance camera clock. App. 131.[5]

Using Neves' chart, an ECCF investigator, Maria Theodoridis, adjusted the time stamps on the videos showing Shaw leaving and returning from break. After her corrections, the video evidence showed that Shaw left for

---

[4] The facilities systems clock is accurate because Neves calibrates it twice a week.

[5] Neves made his calculations a few days after the incident, and so his chart approximated the drift on the night of the incident. One surveillance camera clock was four minutes and forty seconds ahead of the facilities systems clock; another was five minutes and thirteen seconds behind. In short, even though the surveillance cameras were recording simultaneously, they showed a nine minute and fifty-three second difference in time.

break at 2:31:06 a.m. and returned at 2:37:46 a.m.—a few minutes before E.S.'s cell door was opened at 2:43:41 a.m.[6]

On December 31, 2010, Shaw gave a statement to investigators at the Essex County prosecutor's office. Shaw denied making sexual advances to E.S., repeatedly and emphatically denied opening her cell door, and repeatedly denied even entering her cell. Shaw told the investigators that he left the women's unit on his break "at like two thirty, two forty" for "about twenty minutes" and returned "maybe something about . . . three o'clock." SA 5.

At trial, Shaw testified consistent with his prior statement. He denied making sexual comments to E.S., denied opening E.S.'s cell door, and denied having sexual intercourse with E.S. Shaw testified that he was on break "[n]o more than 20 minutes," but also agreed that it was more accurate to say that he was "only gone six or seven minutes." App. 764. Shaw also testified that male and female inmates were known to be engaging in sexual intercourse in the ECCF gym.

The jury convicted Shaw of deprivation of civil rights through aggravated sexual abuse, 18 U.S.C. § 242, and obstruction of justice, 18 U.S.C. § 1512(b)(3).[7] The District

---

[6] If the time stamps had not been corrected, the videos would have shown Shaw returning from break at 2:42:49, a minute before E.S.'s cell door opened at 2:43:41 a.m.

[7] The jury, however, found that the deprivation of civil rights did not result in bodily injury. *See* 18 U.S.C. § 242.

Court sentenced Shaw to 25 years' incarceration and 5 years' supervised release. This represented a downward variance from the Sentencing Guideline range of life. This timely appeal followed.[8]

## II

We begin by addressing Shaw's claims related to his conviction for deprivation of civil rights by aggravated sexual abuse, 18 U.S.C. § 242. Shaw challenges (1) the District Court's jury instructions and (2) the sufficiency of the evidence. We will describe the statute and then address each claim in turn.

## A

## 1

A deprivation of civil rights under Section 242 of Title 18 occurs where a defendant "under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 18 U.S.C. § 242. This is a Reconstruction Era civil rights law. *United States v. Lanier*, 520 U.S. 259, 264 & n.1 (1997). "Section 242 makes it a crime for a state official to act 'willfully' and under color of

---

[8] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

law to deprive a person of rights protected by the Constitution." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *see also Lanier*, 520 U.S. at 264. The statute is "unusual for its application in so many varied circumstances." *Koon v. United States*, 518 U.S. 81, 101 (1996). Among these, "[t]here are a multitude of cases in which prison administrators have been prosecuted under [Section 242]." *United States v. Guadalupe*, 402 F.3d 409, 414 (3d Cir. 2005).

As is relevant here, Section 242 sets forth three statutory maximum sentences. First, the default maximum sentence is "imprison[ment] not more than one year." 18 U.S.C. § 242. Second, "if bodily injury results . . . or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire" the statutory maximum is "imprison[ment] not more than ten years." *Id.* Third, "if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, *aggravated sexual abuse*, or an attempt to commit aggravated sexual abuse, or an attempt to kill" the statutory maximum is life imprisonment or death.[9] *Id.* (emphasis added); *see also* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322 § 320103 (1994) (enacting, *inter alia*, increased statutory maximum sentence for aggravated sexual abuse or its attempt).

---

[9] *Cf. Kennedy v. Louisiana*, 554 U.S. 407, 413 (2008) (holding that the Eighth Amendment bars the death penalty for rape of a child where the crime did not result and was not intended to result in death).

8

In the case before us, the Government charged Shaw with both the base and aggravated violations of Section 242. As to the base offense, Shaw was charged with depriving E.S. of due process through unwanted sexual contact so egregious as to shock the conscience. *See Lanier*, 520 U.S. at 261; *United States v. Giordano*, 442 F.3d 30, 47 (2d Cir. 2006). As to the aggravated offense, the Government charged Shaw with, *inter alia*, a violation of civil rights through "aggravated sexual abuse." App. 20.

Section 242, notably, does not define the term "aggravated sexual abuse." 18 U.S.C. § 242. While this Court has not yet addressed the issue, a number of our sister Circuits have defined the term by reference to the federal aggravated sexual abuse statute, 18 U.S.C. § 2241, excluding its jurisdictional requirements. *See Cates v. United States*, 882 F.3d 731, 736 (7th Cir. 2018); *United States v. Lanham*, 617 F.3d 873, 888 (6th Cir. 2010); *United States v. Holly*, 488 F.3d 1298, 1301 (10th Cir. 2007); *United States v. Simmons*, 470 F.3d 1115, 1120 (5th Cir. 2006). Likewise, the Government used this definition in its indictment of Shaw, and the parties agree on appeal that this was appropriate. As such, we will employ this approach, defining aggravated sexual abuse for the purposes of Section 242 by reference to 18 U.S.C. § 2241(a).

**2**

Aggravated sexual abuse under Section 2241(a) "prohibits forced sexual acts against another person." *Lockhart v. United States*, 136 S. Ct. 958, 964 n.1 (2016) (quotation marks omitted). The statute is violated where the

offender "knowingly causes another person to engage in a sexual act—(1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping; or attempts to do so." 18 U.S.C. § 2241(a).[10]

We read the aggravated sexual abuse statute, Section 2241(a), in contrast to the statute defining the lesser crime of (non-aggravated) sexual abuse, 18 U.S.C. § 2242(1). *See, e.g.*, *Cates*, 882 F.3d at 736; *United States v. H.B.*, 695 F.3d 931, 936 (9th Cir. 2012); *United States v. Crowley*, 318 F.3d 401, 406 (2d Cir. 2003); *United States v. Lauck*, 905 F.2d 15, 18 (2d Cir. 1990). Indeed, sexual abuse is defined by reference to aggravated sexual abuse—Section 2242(1) contains an explicit "carve-out" for threats encompassed by Section 2241(a)(2). *Cates*, 882 F.3d at 736. Sexual abuse occurs, in relevant part, where the defendant knowingly "causes another person to engage in a sexual act by

---

[10] A "sexual act" includes, in relevant part, "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person" or "contact between the penis and the vulva." 18 U.S.C. § 2246(2)(A), (C). A "'sexual act' . . . require[s] penetration or actual skin-to-skin contact between various specified body parts." *United States v. Dahl*, 833 F.3d 345, 355 (3d Cir. 2016) (citing 18 U.S.C. § 2246(2)(A)-(C)); *see also id.* (citing 18 U.S.C. § 2246(2)(D)); *United States v. Hayward*, 359 F.3d 631, 641 (3d Cir. 2004) (observing that "'sexual act' . . . requires skin-to-skin touching").

threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping)." 18 U.S.C. § 2242(1).

When read together, Sections 2241(a) and 2242(1) demonstrate Congress's graded approach to criminalizing sexual assault.[11] Aggravated sexual abuse requires the jury to "find that the defendant (1) actually *used force* against the victim *or* (2) that he made a *specific kind* of threat—i.e. that he threatened or placed the victim in fear of death, serious bodily injury, or kidnapping." *Cates*, 882 F.3d at 737 (emphasis in original); *see also H.B.* 695 F.3d at 936. In contrast, sexual abuse "encompasses the use of any [other] kind of threat or other fear-inducing coercion to overcome the victim's will." *Cates*, 882 F.3d at 737. "Threats or fear-inducing coercion of a lesser nature can support a conviction

---

[11] The legislative history further supports this reading of the text. Sections 2241 and 2242 were enacted together as part of the Sexual Abuse Act of 1986, Pub. L. No. 99-654, 100 Stat. 3660 (1986). The Act created "a series of graded sexual offenses" and employed a "graded approach" to criminalizing sexual assault. *Hearings on Sexual Abuse Act of 1986 before Subcommittee on Criminal Justice of the House Committee of the Judiciary*, 99th Cong., 2d Sess. at 3-4 (Apr. 29, 1986) (statement of principal sponsor Representative Steny H. Hoyer); *see also* H. Rep. No. 594, 99th Cong., 2d Sess. (May 9, 1986), reprinted in 1986 U.S.C.C.A.N. 6186, 6190 (identifying Representative Hoyer as the principal sponsor).

for the crime of sexual abuse under § 2242(1) but not aggravated sexual abuse under § 2241(a)(2)." *Id.*

**3**

Other Circuits have further interpreted Section 2241(a)(1) by reference to a House Judiciary Committee Report accompanying the Sexual Abuse Act of 1986. *See H.B.*, 695 F.3d at 936 (quoting H. Rep. No. 99-594 at 14 n.54a); *see also United States v. Johnson*, 492 F.3d 254, 255 (4th Cir. 2007); *United States v. Fire Thunder*, 908 F.2d 272, 274 (8th Cir. 1990); *Lauck*, 905 F.2d at 17.

The House Report provides that for Section 2241(a), "[t]he *requirement of force* may be satisfied by a showing of [1] the use, or threatened use, of a weapon; [2] the use of such physical force as is sufficient to overcome, restrain, or injure a person; or [3] the use of a threat of harm sufficient to coerce or compel submission by the victim." H. Rep. No. 99-594 at 14 n.54a (emphasis added). There are two problems, however, with adopting this definition in its entirety.

First and notably, the House Report purports to define something specific—the "requirement of force" for Section 2241(a). *Id.* Although this point has been overlooked, *see, e.g.*, *Johnson*, 492 F.3d at 258, the House Report does not purport to define the element "using force against th[e] other person" under Section 2241(a)(1). In fact, the House Report also purports to define the "requirement of force" for Section 2242(1). H. Rep. No. 99-594 at 16. The latter statute, of course, does not contain the element "using force against th[e] other person." Therefore, the "requirement of force"

12

defined in the House Report cannot be the element "using force against th[e] other person" under Section 2241(a)(1).

The second problem relates to the statutory text. The House Report defines the "requirement of force" for Section 2241(a) in three ways. The third is "the use of a threat of harm sufficient to coerce or compel submission by the victim." *Id.* at 14 n.54a. But "defining 'force' in this expansive way . . . flatly contradict[s] the text of § 2241(a)(1)," which requires actual force. *Cates*, 882 F.3d at 737; *see also* Br. for Appellee 24 (agreeing with "the unremarkable proposition that aggravated sexual assault 'requires a showing of actual force'") (quoting *H.B.*, 695 F.3d at 936 (interpreting Section 2241(a)(1))).

Moreover, it is not a solution to construe the House Report's third definition as applying to Section 2241(a)(2) instead of Section 2241(a)(1). On its face, Section 2241(a)(2) encompasses only certain threats—of "death, serious bodily injury, or kidnapping." 18 U.S.C. § 2241(a)(2). If adopted, the third portion of the House Report's definition would collapse the distinction between Section 2241(a)(2) and Section 2242(1).

Indeed, the Government at no point defends the House Report's third definition. Instead, the Government asks us to adopt the second portion of the House Report's definition, defining the "requirement of force" as "the use of such physical force as is sufficient to overcome, restrain, or injure a person." H. Rep. No. 99-594 at 14 n.54a. The Government relies primarily upon *United States v. Lauck*, in which the Second Circuit quotes only this portion of the House Report's definition. *See* Br. for Appellee 17 (quoting *Lauck*, 905 F.2d

13

at 17).  Specifically, *Lauck* provides that for the purpose of Section 2241(a)(1), "[t]he requirement of force may be satisfied by a showing of . . . the use of such physical force as is sufficient to overcome, restrain, or injure a person . . . ." 905 F.2d at 17 (alterations in original) (quoting H. Rep. No. 99-594 at 14 n.54a); *see also United States v. Archdale*, 229 F.3d 861, 868 (9th Cir. 2000) (same); *United States v. Fulton*, 987 F.2d 631, 633 (9th Cir. 1993) (same).  We agree with this approach and will adopt it for the analysis that follows.[12]

**B**

We turn now to the District Court's jury instructions on the alleged deprivation of civil rights through aggravated sexual abuse, 18 U.S.C. § 242.  Where, as here, a party has objected to a trial court's jury instruction, "[w]e exercise plenary review in determining 'whether the jury instructions stated the proper legal standard.'"  *United States v. Khorozian*, 333 F.3d 498, 507-08 (3d Cir. 2003) (citation omitted).  We review the "wording of instructions for abuse of discretion."  *Gov't of Virgin Islands v. Mills*, 821 F.3d 448, 465 (3d Cir. 2016).  "We must reverse if 'the instruction was capable of confusing and thereby misleading the jury.'"  *United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995) (en banc); *see also United States v. Tykarsky*, 446 F.3d 458, 477 (3d Cir. 2006).  In reviewing the charge, "we consider the

---

[12]  We need not reach the first portion of the House Report's definition, providing that for Section 2241(a), "[t]he requirement of force may be satisfied by a showing of the use, or threatened use, of a weapon."  H. Rep. No. 99-594 at 14 n.54a.

14

totality of the instructions and not a particular sentence or paragraph in isolation." *Khorozian*, 333 F.3d at 508 (citation omitted).

**1**

In Shaw's case, the District Court first instructed the jury on the base offense of deprivation of civil rights, 18 U.S.C. § 242. As part of this instruction, it charged the jury on the alleged deprivation of the right to bodily integrity, in relevant part, as follows:

> The government alleges that the defendant deprived [E.S.] of the right to bodily integrity by sexually assaulting her. In determining whether the alleged conduct of the defendant constitutes unwanted sexual contact, it is not necessary to find that the defendant used physical force against [E.S.]. Instead, you may consider factors such as the context in which the alleged incident occurred, the relationship between the parties, *the relative positions of power and authority between the defendant and [E.S.], the disparity in size between the defendant and [E.S.], and the use of mental coercion.*

App. 803-04 (emphasis added).

15

The District Court later instructed the jury on the aggravated crime of deprivation of civil rights through aggravated sexual abuse, 18 U.S.C. § 242. As part of this instruction, the District Court instructed the jury on the element of "using force against th[e] other person" under Section 2241(a)(1). Shaw challenges a narrow portion of the charge, as follows:

> You may find that the defendant's conduct involved aggravated sexual abuse if you find that he used force during the alleged sexual assault. . . . [R]estraint alone can constitute sufficient force to meet the force requirement when a defendant employs a degree of restraint sufficient to prevent an individual from escaping the sexual contact. *The disparity in coercive power and size between the defendant and [E.S.] are factors that the jury may consider when determining whether force was utilized.*

App. 808-09 (emphasis added).

On appeal, Shaw challenges only the emphasized portion of the charge, in which the District Court instructed the jury that disparities in coercive power and size are "factors" to consider as to aggravated sexual abuse under

16

Section 2241(a)(1).[13]  Specifically, Shaw argues that this "disparit[ies]" instruction was strikingly similar to the District Court's earlier instruction on unwanted sexual contact.  As such, he argues, the jury instructions collapsed the distinction between the greater and lesser offenses.  For the reasons below, we agree.

As to the text of the jury instructions, Shaw correctly notes that the District Court instructed the jury to consider disparities in power and size as "factors" for both a deprivation of civil rights and a deprivation of civil rights through aggravated sexual abuse.  App. 803, 808.  First, the District Court instructed the jury to consider "the disparity in size between the defendant and [E.S.], and the use of mental coercion" when determining whether there was unwanted sexual contact.  App. 803-04.  Second, it instructed the jury to consider "[t]he disparity in coercive power and size between the defendant and [E.S.] . . . when determining whether force was utilized" for aggravated sexual abuse.  App. 808-09.  These instructions together could have "confus[ed] and thereby misle[d]" the jury into believing that non-consent or coerced consent was equivalent to the use of force.  *Zehrbach*, 47 F.3d at 1264.

Indeed, the Seventh Circuit recently rejected a similar disparities instruction in *United States v. Cates*, 882 F.3d at 737.  In *Cates*, the trial court charged the jury that, for the purpose of Section 2241(a)(1), "[f]orce may also be implied from a disparity in coercive power or in size between the

---

[13]  This opinion should not be read to approve of any portion of the jury instructions not challenged on appeal.

17

defendant and [victim]." *Id.* (first alteration in original). On appeal, the Seventh Circuit held that this instruction "erroneously conflated the distinction between 'force' and 'fear,' . . . permitt[ing] the jurors to find that [the defendant] committed aggravated sexual abuse based on proof of something less than either physical force or a threat of fear of death or serious bodily injury." *Id.* We hold the same is true here.

In reaching this conclusion, we recognize that the Tenth Circuit has adopted the opposite position, upholding a jury instruction that "[f]orce may also be implied from a disparity in coercive power or in size between the defendant and the victim or from the disparity in coercive power, combined with physical restraint." *Holly*, 488 F.3d at 1301. The problem with *Holly* is that the approved jury instruction is unmoored from its foundation.

The disparities instruction approved in *Holly* is based upon the House Report accompanying the Sexual Abuse Act of 1986. As explained above, the House Report provides that the "requirement of force" under Section 2241(a) "may be satisfied by . . . the use of such physical force as is sufficient to overcome, *restrain*, or injure a person." H. Rep. No. 99-594 at 14 n.54a (emphasis added). Applying this definition, an early Eighth Circuit decision held that restraint—and thereby force—could be proven, at least in part, through evidence of size disparities. *See United States v. Bordeaux*, 997 F.2d 419, 421 (8th Cir. 1993); *see also United States v. Demarrias*, 876 F.2d 674, 678 (8th Cir. 1989); *Simmons*, 470 F.3d at 1121. Likewise, at oral argument the Government defended the District Court's disparities instruction on the

ground that disparities are relevant to physical restraint.[14] The *Holly* instruction, however, contained no such link. Nor did the disparities instruction in Shaw's case. Instead, the District Court's disparities jury instruction could have misled the jury into "conflat[ing]" non-consent or coerced consent with actual force, undermining Congress's graded approach. *Cates*, 882 F.3d at 737.

**2**

This does not, however, complete our analysis. Rather, we must "consider the totality of the instructions and not a particular sentence or paragraph in isolation." *United States v. Sussman*, 709 F.3d 155, 175 (3d Cir. 2013) (citation omitted). Read in their totality, the District Court's jury

---

[14] *See* Oral Argument at 1:14:53 ("The disparity in size and coercive power is certainly relevant as to whether the force is sufficient to restrain the victim."); *id.* at 1:15:46 ("I'm saying physical force sufficient to restrain the victim, and in that instance a disparity in size and coercive power is certainly relevant to that finding."). Conversely, the Government disclaimed the position that disparities in coercive power *without* physical restraint amount to the use of force under Section 2241(a)(1). *Id.* at 1:17:02 (positing that if there were physical disparities but no restraint "I don't know that there would be force, unless the victim is testing that she is physically unable to escape the sexual contact."); *id.* at 1:25:51 (positing that coerced sexual intercourse based upon a correction officer's threat to revoke inmate's visitation and telephone privileges "would not entail the requisite force to bring this to an aggravated sexual abuse").

instructions did not convey to the jury that it could convict Shaw of a deprivation of civil rights through aggravated sexual abuse without finding actual force. Therefore, considering the charge as a whole, we will affirm. *See United States v. McGill*, 964 F.2d 222, 236 (3d Cir. 1992).

Although the District Court's disparities instruction could have misled the jury, other portions of the charge adequately distinguished between the lesser and aggravated offenses. *See United States v. Berrios*, 676 F.3d 118, 138 (3d Cir. 2012). As to the lesser offense, the District Court explained to the jury that "it is not necessary to find that the defendant used physical force against [E.S.]." App. 803. It instructed the jury that it could convict based upon "unwanted or coerced" sexual contact, App. 803, or a sexual act that was "unauthorized and not due to the free and voluntary consent of [E.S.]," App. 804. It instructed the jury to consider "whether any such sexual act occurred freely and voluntarily, or was the result of official intimidation, harassment, or coercion." App. 804.

In contrast, as to the aggravated offense, the District Court explained to the jury that Section 2241(a) requires either "using force against th[e] other person . . . [o]r . . . placing th[e] other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping." App. 807. Adding clarity, it instructed the jury that Section 2241(a)(1) requires the jury to find that Shaw "used force during the alleged sexual assault," App. 808, and contains a "requirement of force," App. 808.

20

Thus, upon consideration of the charge as a whole, the instructional error does not warrant overturning the verdict. *See Mills*, 821 F.3d at 467.

## C

Relatedly, Shaw also challenges the sufficiency of the evidence for a deprivation of civil rights through aggravated sexual abuse, 18 U.S.C. § 242. Our review of the sufficiency of the evidence is "highly deferential." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc). We ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (emphasis omitted). For the reasons below, we will affirm.[15]

As stated above, the crime of aggravated sexual abuse occurs where the offender "knowingly causes another person to engage in a sexual act—(1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping; or attempts to do so." 18 U.S.C. § 2241(a). Under Section 2241(a)(1), "[t]he requirement of force may be satisfied by a showing of . . . the

---

[15] The parties dispute whether Shaw preserved his sufficiency of the evidence claim in the District Court through a motion for judgment of acquittal. We need not resolve this dispute because, even assuming *arguendo* that the issue was preserved, the claim fails.

use of such physical force as is sufficient to overcome, restrain, or injure a person . . . ." *Lauck*, 905 F.2d at 17 (alterations in original) (quoting H. Rep. No. 99-594 at 14 n.54a).

Shaw argues that the evidence was insufficient to establish that he "us[ed] force against th[e] other person" under Section 2241(a)(1). We disagree. Viewed in the light most favorable to the Government, a rational juror could have found that Shaw used actual force when he "forced himself on [E.S.]," App. 332, by "[p]ressing down" his hand on E.S.'s chest so that she was unable to get up, App. 404, while committing the sexual act of digital penetration, and laid on E.S. with the weight of his body, while having sexual intercourse with her, such that she was unable to move and "felt like [she] couldn't breathe," App. 404. Therefore, Shaw's sufficiency of the evidence claim fails.

## III

We now address Shaw's remaining claims: two evidentiary issues and a constitutional speedy trial claim. Each lacks merit.

## A

In his first evidentiary claim, Shaw challenges a portion of E.S.'s testimony on redirect examination. Specifically, the District Court permitted E.S. to testify on redirect that she is in therapy in connection with the sexual assault. Shaw objected to this testimony, but the District Court overruled the objection on the ground that Shaw opened the door on cross-examination in two ways: (1) by

22

asking E.S. whether she had "done reasonably well getting [her] life together since this event" and (2) by asking E.S. whether she had told school students during a presentation that the "worst" part of her experience in jail was a fight. App. 369, 375.

We need not determine whether the District Court abused its discretion in allowing E.S. to testify that she is in therapy, as any potential error would be harmless. *See United States v. Bailey*, 840 F.3d 99, 124 (3d Cir. 2016). "An evidentiary error is harmless if 'it is highly probable that the error did not contribute to the judgment,' which 'requires that the court possess a sure conviction that the error did not prejudice the defendant.'" *Id.* (quoting *Zehrbach*, 47 F.3d at 1265). Any error in Shaw's case would be harmless "given the truly overwhelming quantity of legitimate evidence" against him, including E.S.'s testimony, the DNA evidence, the cell door records, and the surveillance videos, and given that the Government did not mention this testimony in its closing argument. *United States v. Christie*, 624 F.3d 558, 571 (3d Cir. 2010). Thus, this evidentiary claim fails.

**B**

In his second evidentiary claim, Shaw argues that the District Court admitted lay opinion testimony in violation of Federal Rule of Evidence 701(c). We review this claim for abuse of discretion. *See United States v. Hoffecker*, 530 F.3d 137, 170 (3d Cir. 2008). Under Rule 701, lay opinion testimony must be "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within

the scope of Rule 702." Fed. R. Evid. 701. Rule 701(c) prohibits a party from "us[ing] Rule 701 as an end-run around the reliability requirements of Rule 702 and the disclosure requirements of [Federal Rule of Criminal Procedure 16]." *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 227 (3d Cir. 2008).

Citing Rule 701(c), Shaw challenges the District Court's decision to allow an ECCF maintenance information technician, Neves, to testify as a lay witness. Neves testified regarding the ECCF surveillance camera clocks, which were not synchronized. Neves used "arithmetic" to synchronize the cameras' time stamps *ex post*. App. 153. His testimony was based on subtraction, not "scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c); *see also United States v. Georgiou*, 777 F.3d 125, 144 (3d Cir. 2015) (holding that comparing stock quantities and prices did not require specialized knowledge). Thus, the District Court did not abuse its discretion in admitting Neves's lay opinion testimony.

## C

Finally, Shaw raises a cursory constitutional speedy trial claim. Where, as here, a defendant fails to raise a Sixth Amendment claim in the district court, we review for plain error. *See United States v. Cotton*, 535 U.S. 625, 631 (2002).[16]

---

[16] The plain error test requires (1) an error; (2) that is "clear or obvious" and (3) "affected the defendant's substantial rights, which in the ordinary case means he or she must 'show a reasonable probability that, but for the error,'

In assessing a constitutional speedy trial claim, we consider the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "None of these factors is . . . 'necessary or sufficient' . . . and the factors 'must be considered together with such other circumstances as may be relevant.'" *United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009) (quoting *Barker*, 407 U.S. at 533).

The first factor, the length of the delay, "trigger[s]" the speedy trial analysis. *Doggett v. United States*, 505 U.S. 647, 651 (1992) (citing *Barker*, 407 U.S. at 530-31); *see also Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993) (holding that "though rigid time limitations have been rejected in analyzing the constitutional right to a speedy trial," a delay of fourteen months triggers an analysis of the remaining *Barker* factors). In Shaw's case, the Government concedes that a delay of twenty-seven months was sufficient to trigger an analysis of the remaining *Barker* factors.

---

the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76, 82 (2004)). If these conditions are met, we will exercise our discretion to correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

But rather than argue the *Barker* factors, Shaw merely contends that prejudice can be presumed from the length of the delay. *See Doggett*, 505 U.S. at 655 (recognizing "that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify"). However, even assuming *arguendo* that the delay in Shaw's case was presumptively prejudicial, *Doggett* further provides that "such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria." *Id.* at 656; *see also United States v. Dent*, 149 F.3d 180, 185 (3d Cir. 1998). Thus, there is no clear error.[17]

---

[17] Shaw further argues, fleetingly, that that the Government failed to disclose a letter written by E.S., and that the District Court erred by declining to permit the playing of a supposedly corresponding audio recording. Arguments raised in such a cursory fashion, without adequate citation to the record and authority, are deemed waived. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993); Fed. R. App. P. 28(a)(8)(A). And regardless, both contentions lack merit. As reference to the letter drafted by E.S., Shaw cites the Presentence Investigation Report. That report contains a victim impact statement requested by the Probation Office in preparation for sentencing. Nothing in the Presentence Report, which is the only record support cited by Shaw, suggests that E.S. prepared this statement or provided it to the Government prior to entry of the jury verdict. With respect to the audio recording, the record establishes that trial counsel initially proposed to play a portion of E.S.'s recorded interview, outside the presence of the jury, to refresh her recollection. However, counsel withdrew the request. As such, neither issue presents a basis for relief.

**IV**

The judgment of the District Court will be affirmed.