NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 20-2377

WANDERSON AGUIAR FERREIRA,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

On Petition for Review of a Final Order
of the Board of Immigration Appeals
(No. A098-962-620)
Immigration Judge: Mirlande Tadal

Submitted Under Third Circuit L.A.R. 34.1(a)
March 11, 2021

Before: SMITH, Chief Judge, MCKEE, and AMBRO, Circuit Judges

(Opinion filed: April 20, 2021)

OPINION*

AMBRO, Circuit Judge

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Wanderson Aguiar-Ferreira seeks our review of the Board of Immigration Appeals' ("BIA") refusal to extend his briefing deadline and rejection of his applications for withholding of removal and protection under the Convention Against Torture ("CAT").  We deny his petition.

## I.

Aguiar-Ferreira, a native of Brazil, entered the United States in May 2005 without admission or parole.  The Department of Homeland Security immediately began removal proceedings.  In June 2005, after Aguiar-Ferreira failed to appear for his first hearing, he was ordered removed *in absentia*.  But he did not depart the country.  Years later, removal proceedings recommenced, and Aguiar-Ferreira applied for asylum, withholding of removal, and protection under the CAT.

The Immigration Judge ("IJ") held a hearing in November 2019.[1]  At the hearing, Aguiar-Ferreira claimed he feared returning to Brazil because in March 2016, years after his departure from that country, an off-duty police officer killed his cousin after an argument.  The killing was not random: Aguiar-Ferreira testified that he and his cousin had a longstanding relationship with the officer, who had repeatedly bullied them. Aguiar-Ferreira further asserted that, when he called a Brazilian police station after the killing, an unidentified individual threatened that he would be killed like his cousin if he returned to the country.  However, Aguiar-Ferreira made clear during the hearing that he

---

[1] Aguiar-Ferreira suggests in his brief that the IJ issued an adverse credibility determination, *see, e.g.,* Pet'r's Br. at 33, but this is inaccurate.  The IJ expressly found him credible.  A.R. at 99.

2

had no issues with other police officers during the years he lived in Brazil and has no reason to believe the Brazilian police are looking for him. And news reports suggest his cousin's killer surrendered to the police and was detained.

In December 2019, the IJ denied all of Aguiar-Ferreira's applications.[2] Aguiar-Ferreira appealed to the BIA, but his counsel failed to file a timely brief. Three weeks after the deadline, in March 2020 counsel moved for an extension of the deadline, claiming she never received the briefing schedule. Although counsel reported she was not sure why this happened, she "suspect[ed]" the postal worker may have delivered the document to her neighbor's mailbox by accident, which was apparently a common occurrence. A.R. at 59. Counsel indicated that she only became aware she had missed the deadline when Aguiar-Ferreira himself called the BIA's hotline and discovered his brief was late.

The BIA denied counsel's motion because it was untimely and failed to give good cause for the delay. Approximately two weeks later, counsel filed a document styled as a "motion for reconsideration for late-filed brief," along with a proposed brief. The motion for reconsideration effectively restated the argument in counsel's initial motion for an extension and provided no additional corroboration of the mailing issue. Counsel's sole new argument was that she had been ill for approximately one week (with what she now believes may have been COVID-19) before submitting the motion for reconsideration and the untimely brief.

---

[2] The IJ denied Aguiar-Ferreira's asylum application as untimely, a decision he does not challenge before us.

In June 2020, the BIA dismissed Aguiar-Ferreira's appeal.  As an initial matter, it denied counsel's motion for reconsideration for lack of good cause.  But instead of summarily dismissing the appeal based on counsel's failure to file a timely brief, the BIA turned to the merits.  It affirmed the IJ's conclusion that the threat Aguiar-Ferreira received from an unidentified person at the Brazilian police station was not persecution.  And although Aguiar-Ferreira attempted to show he was persecuted based on his membership in the proposed social group of "family member[s] of [a] cousin who was killed by police in Brazil," the BIA affirmed the IJ's determination that this group was not cognizable because it was not socially distinct within Brazilian society.  A.R. at 9–10.  Finally, the BIA affirmed the IJ's conclusion that Aguiar-Ferreira had not established eligibility for protection under the CAT, because he did not show it was more likely than not he would be tortured with the acquiescence of a public official upon a return to Brazil.

Aguiar-Ferreira filed a petition for review.  However, counsel then missed yet another important deadline by failing to file a timely appearance form.  Only after a warning from the Clerk's Office that the petition would be dismissed if she failed to comply did counsel finally enter her appearance—43 days after the first deadline.

## II.

The BIA had jurisdiction to review the IJ's removal decision under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15.  We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1).  Because only the BIA can issue a final order of removal, our jurisdiction is limited to review of the BIA's decision.  *Guzman Orellana v.*

4

*Att'y Gen.*, 956 F.3d 171, 177 (3d Cir. 2020). However, "we also review the IJ's decision to the extent it is adopted, affirmed, or substantially relied upon by the BIA." *Id.*

**III.**

Aguiar-Ferreira raises three main arguments in his petition for review. None provides a basis for granting the petition.

**A. The BIA's Refusal to Extend the Briefing Deadline**

Aguiar-Ferreira first challenges the BIA's refusal to extend the briefing deadline. The Government argues we should review the BIA's denial of counsel's motion for reconsideration on this issue only for abuse of discretion. We agree. Although neither party has identified case law setting a standard of review in this specific context, we typically review for abuse of discretion in analogous situations. *See, e.g., Pllumi v. Att'y Gen.,* 642 F.3d 155, 158 (3d Cir. 2011) (motions to reconsider or reopen); *Ponce-Leiva v. Ashcroft,* 331 F.3d 369, 377 (3d Cir. 2003) (motions to continue). Under this standard, we reverse only if the BIA's decision was "arbitrary, irrational, or contrary to law." *Hashmi v. Att'y Gen.,* 531 F.3d 256, 259 (3d Cir. 2008).

No abuse of discretion is apparent here. Aguiar-Ferreira's counsel did not provide good cause for her failure to file a timely brief. Although she claimed the post office frequently misdelivered her mail, she provided no corroboration (through an affidavit or otherwise) of this issue. Moreover, it is undisputed that counsel was aware of the issue long before the briefing notice was issued in this case, yet it does not appear that she took reasonable steps to fix the problem in a timely fashion. And counsel's claim that she was "ill" is a red herring because she asserted that her illness occurred *after* the briefing

5

deadline had already passed.  Finally, the BIA did not penalize Aguiar-Ferreira by summarily dismissing his appeal for failure to file a timely brief—instead, it issued a thorough, well-reasoned opinion addressing his claims on the merits.  Hence the BIA did not abuse its discretion on this issue.

## B.  Withholding of Removal

Aguiar-Ferreira next challenges the rejection of his withholding-of-removal claim. This argument is unpersuasive.  As an initial matter, there are significant gaps in counsel's brief: it fails to address, except in cursory fashion, the reasons the BIA gave for rejecting Aguiar-Ferreira's withholding claim.  As such, these arguments are arguably forfeited.  *Cf. United States v. Shaw,* 891 F.3d 441, 455 n.17 (3d Cir. 2018) ("Arguments raised in . . . a cursory fashion, without adequate citation to the record and authority, are deemed waived.").

But even considering the issue on the merits,[3] Aguiar-Ferreira's claim fails.  To establish eligibility for withholding of removal, a petitioner must show that, "if returned to his country, it is more likely than not that [his] life or freedom would be threatened on account of [a protected ground]."  *Amanfi v. Ashcroft*, 328 F.3d 719, 726 (3d Cir. 2003). If the petitioner shows he has experienced past persecution, he is entitled to a rebuttable presumption that future persecution will occur for the same reason. *See* 8 C.F.R.

---

[3] We review the BIA's legal conclusions *de novo*, *Doe v. Att'y Gen.*, 956 F.3d 135, 141 (3d Cir. 2020), and we defer to its factual findings "if they are supported by reasonable, substantial, and probative evidence in the record considered as a whole," *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 543 (3d Cir. 2018).

6

§ 1208.16(b)(1)(i); *see also Gonzalez-Posadas v. Att'y Gen*., 781 F.3d 677, 684 (3d Cir. 2015).

The BIA soundly affirmed the IJ's conclusion that Aguiar-Ferreira failed to establish past persecution. Notably, Aguiar-Ferreira experienced no physical harm during the approximately 17 years he lived in Brazil. The sole incident of persecution he alleges was an isolated, unfulfilled threat in 2016 from an unidentified individual. "[U]nfulfilled threats must be of a highly imminent and menacing nature in order to constitute persecution." *Li v. Att'y Gen.*, 400 F.3d 157, 164 (3d Cir. 2005). The non-specific threat Aguiar-Ferreira received approximately five years ago did not meet this threshold. Aguiar-Ferreira does not allege he has received any threats since that time, and he concedes he has no reason to believe the Brazilian police are looking for him.

Even if Aguiar-Ferreira had established the requisite persecution, the BIA properly rejected Aguiar-Ferreira's attempt to link that persecution to his membership in a particular social group of "family members of cousins killed by police." To constitute a particular social group, a group must be, among other criteria, "socially distinct within the society in question." *S.E.R.L.*, 894 F.3d at 540 (citation omitted).[4] Aguiar-Ferreira

---

[4] Aguiar-Ferreira argues that we should overturn the BIA's decision in *Matter of A-B-,* 27 I. & N. Dec. 316, 344 (AG 2018), which discusses the three-part framework for establishing a particular social group, including the social distinction requirement. This argument fails for more than one reason. As the Government points out, the BIA did not announce a new framework in *Matter of A-B-*; it simply reiterated the framework it had previously adopted—a framework to which we have deferred under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984), in a precedential opinion. *See S.E.R.L.*, 894 F.3d at 540. Moreover, even if we had the authority as a panel to overturn our Court's prior precedent, Aguiar-Ferreira has provided no explanation why we should do so.

has provided no basis for us to conclude that his "home society actually does recognize [his proposed] group as being a 'distinct' and identifiable group." *Id.* at 553. His only argument on this point is that his proposed group is "socially distinct within the society in question because the police abused his governmental authority." Pet'r's Br. at 26. This statement provides no support for Aguiar-Ferreira's claim; whether the officer abused his governmental authority has no bearing whatsoever on whether Aguiar-Ferreira's proposed social group is socially distinct. His withholding-of-removal claim therefore fails.[5]

## C. Convention Against Torture

Finally, Aguiar-Ferreira argues the BIA erred in rejecting his CAT claim. We are unpersuaded. As with his withholding-of-removal claim, Aguiar-Ferreira's brief does not adequately address each of the BIA's specific reasons for rejecting his CAT claim, thus arguably forfeiting the issue. *See Shaw,* 891 F.3d at 455 n.17. And the CAT-related arguments that Aguiar-Ferreira does raise are unsupported and conclusory. For example, Aguiar-Ferreira argues that the BIA "deviated from the *Matter of G-A* holding and put an

---

[5] Aguiar-Ferreira states, without meaningful support or elaboration, that the BIA's handling of his withholding-of-removal claim violated his right to due process. Because his argument on this issue is so conclusory, we will not address it in detail. However, it is worth noting that Aguiar-Ferreira does not argue the BIA denied him due process by refusing to grant his counsel an extension of the briefing deadline. Instead, his argument focuses solely on the BIA's *substantive* approach to his withholding claim, yet cites mostly Ninth Circuit case law focusing on *procedural* due process. At bottom, Aguiar-Ferreira has provided no basis for concluding the BIA denied him "the right to a full and fair hearing that allow[ed] [him] a reasonable opportunity to present evidence on [his] behalf" with respect to his withholding claim. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 596 (3d Cir. 2003) (internal quotation marks and citation omitted).

impermissible burden of proof upon" him.  Pet'r's Br. at 35.  But his counsel fails even to provide a citation for the *Matter of G-A* case or explain why she believes the BIA departed from the holding in that case.

Even addressing the CAT issue on the merits, Aguiar-Ferreira cannot prevail.  To succeed on this claim, he needed to show that, if he were removed, "it is more likely than not" he would be tortured "by, or at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity."  *See* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); *Sevoian v. Ashcroft*, 290 F.3d 166, 174–75 (3d Cir. 2002).  "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman, or degrading treatment or punishment."  8 C.F.R. § 1208.18(a)(2).  In evaluating whether a petitioner is likely to be tortured, the agency considers "all evidence relevant to the possibility of future torture," including evidence of "past torture inflicted upon the applicant." 8 C.F.R. § 1208.16(c)(3).

The BIA reasonably concluded that Aguiar-Ferreira did not suffer torture in the past because the threat he experienced does meet even the level of persecution, let alone to the arguably more demanding standard for torture.  Moreover, there is no indication that any torture Aguiar-Ferreira might theoretically face would be by or with the acquiescence of a public official, particularly given that the tragic death of his cousin seems to have stemmed from a personal vendetta, and the officer who killed his cousin appears to have surrendered and been detained by the authorities, at least temporarily.  Accordingly, we reject Aguiar-Ferreira's CAT argument.

9

**IV.**

We conclude with an admonishment to Aguiar-Ferreira's counsel, and to other attorneys representing petitioners in removal proceedings. "Because aliens often do not speak English and are usually unfamiliar with our laws and procedures, they are particularly vulnerable to inadequate counsel." *Xu Yong Lu v. Ashcroft*, 259 F.3d 127, 132 (3d Cir. 2001). And the stakes in immigration proceedings—whether an individual may stay in this country or will be detained or removed—are extraordinarily high. It is therefore essential that counsel in immigration cases take care to represent their clients diligently. While we do not take the extraordinary step of sanctioning Aguiar-Ferreira's counsel today, we are troubled by some of her repeated failings in this case—missing critical deadlines, failing to make a genuine effort to remedy or justify those errors, and filing a brief that forfeited dispositive issues. Given the weaknesses in Aguiar-Ferreira's case, it does not appear that counsel's failings in these areas prejudiced her client. But under other circumstances they could easily have done so. We urge counsel, and others in her position, to take their obligations to their clients seriously to avoid these sorts of issues in the future.

*       *       *       *       *

We deny Aguiar-Ferreira's petition for review.